No. 21824.

Isaac Carlos DeBaca *v.* The People of the State
of Colorado.
(418 P.2d 286)

Decided October 3, 1966.

CARL FELDHAMER, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JAMES F. PAMP, Assistant, for defendent in error.

*In Department.*

PER CURIAM.

ISAAC CARLOS DEBACA, the plaintiff in error, hereinafter referred to as the defendant, was convicted of robbery and conspiracy to commit robbery as alleged in two counts of an information so charging him. He was then sentenced to the penitentiary for a term of 25 to 50 years on the robbery count, and 5 to 10 years on the conspiracy count, which sentences were to be served concurrently.

The defendant's main contention, as we understand it, is that the evidence is legally insufficient to support the jury's verdict, in that the evidence fails to "tie" the defendant to the robbery with which he stood charged. Hence, we propose to analyze the People's evidence in some detail.

Mary Ortiz, an elevator pilot in the University Building, a downtown Denver office building, testified for the People that on the 24th day of September, 1964, shortly after the hour of 1 P.M., two men approached her in the lobby and entered her elevator. Both were dressed in "fatigues, one piece." Each carried in his right arm and hand, in such manner as to hide his face, a cardboard box. To her query she was told by one of the men that the cartons contained stationery. She stated that it seemed to her the boxes did not look heavy enough to be carrying stationery. One of the boxes bore the printed word "TIDE" on it. Their clothes were described in detail as being fatigues, one piece,

belts buckled, similar color of khaki, "awfully neat," and neither wore hats according to her observation. The two were noted by her to be of Spanish ancestry, having black hair, and one was described as being noticeably taller than the other. Upon leaving the elevator at the sixth floor exit the witness noted that they walked to the left, where was located a stairway, a lavatory, and also some offices. Her identification of People's Exhibits A and B, the clothing which she testified they wore in her presence, was convincing.

Another witness for the People, Mrs. Grace Leaf, testified that in her capacity as a law office secretary, she had occasion to go to the sixth floor of the University Building at approximately the same time of the elevator departure, and observed in the space between the offices and the elevator, two men, one taller, (perhaps "5 ft. to 8 or 10") than the other, "about a head shorter." Their clothing was "army-type fatigues" similar to those exhibited to her on the witness stand, and generally comparable to that described by Miss Ortiz, the elevator pilot. The men were proceeding toward the elevators with boxes in their hands.

Neither the witness Ortiz nor Leaf was able to identify the defendant as being one of the two men each had observed in the University Building on the aforementioned occasion. Both testified, however, that the defendant was about the same height as the taller of the two men; that the color of his hair was about the same as the taller man; that his complexion, described as "fairly light," resembled that of the taller man.

The testimony of the victim of the robbery, William H. Thornton, was that at about 1:45 P.M., while sitting with his wife in an inner office of their finance firm, which was located on the eighth floor of the same building where the above described events transpired, his outer main door buzzer sounded. Thornton thereupon proceeded to that room, where he was confronted by two men, one holding a pistol, which was placed

and held at the back of the victim's neck. The victim's hands were quickly tied behind his back with a lady's nylon hose. One man was tall, described as about "five-foot ten," the other short, "about five-three." Both were wearing coveralls and bill-type caps similar to those admitted in evidence. Both had their heads covered with tight fitting Halloween-type masks, thereby preventing facial identification.

Shortly after Thornton entered into the main room, his wife, Rita, also entered and she too was tied, and by the "smaller of the two" made to lie on the floor. Both intruders had guns. Her testimony was fully corroborative of that of her husband as to the similarity of type of clothing worn by the intruders and the height differential between the two, although she was unable to positively identify either men or clothing.

Taken by the intruders in the course of their pilfering during and following the incident above described was $1271.50 from the office cash drawer, an automatic pistol, and a quantity of unused checks from the office safe. These items were thrown by the two men into two cardboard boxes which they had carried and placed upon the office counter upon their entry into the office and which they took with them upon final exit.

Police investigation followed the incident immediately, during the course of which the police found two cardboard boxes on the stairway connecting the seventh and eighth floors of the building. They contained two caps and two fatigue uniforms. Detailed testimony by fingerprint experts, adequately qualified as such, was to the effect that they discovered on one of the boxes found by Officer Mortenson on the stairway bearing the word "TIDE" two latent fingerprints, which were described as "fresh" prints and were identified as those of the left index and left middle finger of the defendant.

■ The defendant urges error in the admission of witness Thornton's testimony to the effect that the defendant had come into his office on one occasion

about six weeks prior to the robbery, and that he (Thornton) could still identify him although on that prior occasion the defendant was sporting a ten days' growth of beard. The witness, under cross-examination, recanted as to "positive" identification, although he testified that in "his own mind" he was still sure of his identification. The whole of such testimony, however, remained a proper matter for consideration of the jury, any possible uncertainty of identification under the circumstances going to its weight rather than to its admissability. *Bingham v. People,* 157 Colo. 92, 401 P.2d 255, citing *People v. Spinuzzi,* 149 Colo. 391, 369 P.2d 427.

The defendant offered no evidence in his own behalf. In *Schamber v. People,* 159 Colo. 102, 410 P.2d 514 we held that where a defendant has elected not to testify nor has he otherwise offered any evidence in his own behalf, he cannot thereafter successfully complain upon review by us when the jurors have drawn inferences of guilt against him which are warranted by the evidence.

It is quite true that to a considerable degree the People's case consisted of circumstantial evidence. But that circumstantial evidence, no less than direct evidence, may support a jury verdict of guilty and that it is for the jury, in the last analysis, to weigh it under appropriate instructions, there remains no question. *Keller v. People,* 153 Colo. 590, 387 P.2d 421; *Militello v. People,* 95 Colo. 519, 37 P2d 527, 20 Am. Jur. *Evidence,* § 273.

To such effect the jury was here adequately instructed by Instruction 13, in these words, viz: "What is meant by circumstantial evidence in criminal cases is the proof of facts and circumstances connected with or surrounding the commission of the crime charged; and if these facts and circumstances are sufficient to satisfy you of the guilt of the defendant beyond

a reasonable doubt, such proof is sufficient to authorize a verdict of guilty.

"Where a conviction is sought on circumstantial evidence alone, as in this case, the People must not only show beyond a reasonable doubt that the alleged facts and circumstances are true, but the facts and circumstances must be such as are absolutely incompatible, upon any reasonable hypothesis, with the innocence of the defendant, and incapable of explanation upon any reasonable hypothesis other than that of the guilt of the defendant."

Among the unrefuted, material, and pertinent circumstances which present a complete picture consonant with the findings and verdicts of the jury are: the differing heights of two men who entered the elevator of a public office building, both clothed in identifiable "fatigue-type" uniforms, holding two cardboard boxes, one imprinted with trade-name "TIDE," at or very near the approximate hour of the established offense; their joint exit from the elevator on the sixth floor; observance of two men on the floor of the elevator exit at a corresponding hour, correspondingly clothed, of corresponding dissimilar height, carrying two boxes; the intrusion of two men clothed in uniform-type apparel, with faces masked, into the eighth-floor office of the victims, such men carrying and finally exiting with the two carton boxes; the finding by the police on the seventh floor-eighth floor stairway, within minutes of the established offense, of two cartons containing uniforms of similar design to those described by the witness; and the establishment by qualified expert witnesses of the existence on the "TIDE" box found in such stairway of the print of the defendant DeBaca's left index and left middle fingers, all unexplained in the record.

■ That the jury was fully justified in its finding of guilt as to the two counts of the information, viz: so-called aggravated robbery and conspiracy to commit

the same, is thus in our view fully established by the whole record.

The other assignments of error we find to be without merit.

The judgment is affirmed.

MR. JUSTICE FRANTZ, MR. JUSTICE McWILLIAMS AND MR. JUSTICE SCHAUER concur.