No. 22883.

ISAAC C. DEBACA *v.* MOSE TRUJILLO, WARDEN, COUNTY JAIL AND UNDERSHERIFF.
(447 P.2d 533)

Decided November 25, 1968.

EDWARD H. SHERMAN, Public Defender in and for the City and County of Denver, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JOHN P. MOORE, Assistant, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE MOORE delivered the opinion of the Court.

PLAINTIFF in error will be referred to as the defendant. He was convicted of robbery and conspiracy to commit robbery and sentenced to a term in the state penitentiary. The judgments of guilt on these charges were reviewed by this court and affirmed on October 3, 1966, *Isaac Carlos DeBaca v. People,* 160 Colo. 543, 418 P.2d 286. On October 25, 1966, defendant filed in the district court an instrument entitled "Petition for a Writ of Habeas Corpus." At the hearing on that petition defendant appeared pro se and statements were made by him as well as by the district attorney. No evidence was taken. At the conclusion of the "hearing" which was in substance nothing more than an argument as to whether, on the face of the petition, the defendant was entitled to relief, the trial court denied the petition.

It was alleged in the petition that on October 29, 1964, the defendant was arrested in Cheyenne, Wyoming "on a warrant from the City and County of Denver"; that he was placed in jail in Cheyenne; that he refused to waive extradition proceedings; that he requested counsel, which was refused. The petition also contained the following:

"That approximately 75 days after his arrest and on or about January 12, 1965 in the nighttime at about 11:00 P.M., two members of the Sheriff's Department of the City and County of Denver with the aid of the

Cheyenne Sheriff and his deputies, did kidnap him under fear and threat of bodily harm and death and transported him to Denver, where he was placed in the Denver County Jail and held there for 3 days or until about January 15, 1965;

"That on or about January 15, 1965 he was fingerprinted;

"That on or about January 18, 1965 he was brought before the Honorable Judge Sanchez, at which time he requested a preliminary hearing, which request was granted and the hearing set for one week later;

"That thereafter, one week later, he was brought before Judge Sanchez and advised that his case had been bound over to the District Court and that the County Court had no jurisdiction to give him a preliminary hearing;

"That he was then tried for the alleged offense and on April 27, 1965 found guilty and sentenced to a term of 25 to 50 years;

"That this case and sentence were then appealed to the Colorado Supreme Court with his appointed counsel and they based his appeal on the sufficiency of the evidence but did not raise issues as to the illegality of those pre-trial violations which occurred and deprived him of his constitutional rights;

"That the Colorado Supreme Court affirmed his conviction but did not adjudicate any of the issues relating to the violation of his constitutional rights which are now presented in his Petition for a Writ of Habeas Corpus."

█ Assuming arguendo that the allegations of the petition are true, the question is presented as to whether the defendant would be entitled to discharge from imprisonment upon his conviction of robbery and conspiracy herein above mentioned.

█ It is clearly established that once jurisdiction over the person of the accused is established in a criminal case, the court before which he is arraigned has power to adjudicate the questions raised by the charge and the pleas entered thereon. How, or under what cir-

cumstances, the accused came into the jurisdiction of the court is immaterial and has no bearing upon the power of the court to try the issues presented. In *People v. Griffith,* 130 Colo. 475, 276 P.2d 559, the applicable general rule is quoted with approval from 22 C.J.S. Criminal Law, § 144, as follows:

"As a general rule, however, the jurisdiction of the court in which an information or indictment is found is not impaired by the manner in which accused is brought before it; courts of criminal jurisdiction not being required to inquire as to how the prisoner came within reach of their mandates, the presence of accused in the court on a proper charge being sufficient to confer jurisdiction of his person thereon, even though he was arrested without a warrant contrary to law. The illegal arrest of one charged with crime is no bar to his presecution if all other elements necessary to give a court jurisdiction to try accused are present, a conviction in such a case being unaffected by such unlawful arrest."

Unlawful conduct of arresting officers, or other persons holding public office, may have certain effects upon admissibility of evidence, but it does not destroy jurisdiction of the court to try a criminal charge lodged against a person brought before it.

 Defendant maintains that the court which tried him initially had no jurisdiction to do so because petitioner was not granted a preliminary hearing in the county court. He argues that it is statutory that such a hearing shall be held prior to the filing of a direct information in the district court. Whether a preliminary hearing shall be had is purely a procedural matter and in such cases the rules of criminal procedure govern and take precedence over statutory provisions. *Casias v. People,* 160 Colo. 152, 415 P.2d 344; *Ferguson v. People,* 160 Colo. 389, 417 P.2d 768; *Rhodus v. People,* 160 Colo. 407, 418 P.2d 42; *Lucero v. People,* 161 Colo. 568, 423 P.2d 577. Applying this principle we hold that there is

316

no prerequisite to the filing of a direct information that a preliminary hearing be held. Colo. R. Crim. P. 7(b)(3)(i). This rule clearly states that a direct information may be filed, with the consent of the court, even though a preliminary examination has not been held.

Defendant contends that he was denied his sixth amendment right to counsel because counsel was not present at the time he was fingerprinted. He contends further that since the taking of fingerprints was a critical, or the crucial, factor in his conviction, there was an inherent compulsion therein which was tantamount to a denial of due process because petitioner was not "warned of his rights" and was compelled to give evidence against himself. In *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, and *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, the Supreme Court of the United States has clearly indicated that evidence of this kind does not come within the coverage of the constitutional privilege against self-incrimination.

The judgment is affirmed.