No. 23730.

JOHNNY B. TATUM *v.* THE PEOPLE OF THE STATE OF COLORADO.
(483 P.2d 964)

Decided April 19, 1971.

302

Robert D. Gower, Virgil D. Dohe, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, James F. Pamp, Assistant, Richard G. McManus, Jr., Assistant, for defendant in error.

*En Banc.*

William L. Gobin, District Judge,* delivered the opinion of the Court.

Plaintiff in error, herein referred to as the defendant, was charged in a six-count information with burglary,

---

*District Judge sitting under assignment by the Chief Justice under provisions of article VI, section 5(3) of the constitution of Colorado.

larceny, receiving stolen goods, and conspiracy to commit each of these crimes.

At the end of the People's case in the trial before a jury, the court dismissed the three conspiracy counts but denied defendant's motion for acquittal. The jury found him guilty of receiving stolen goods, and not guilty of burglary and larceny. His Motion for Judgment of Acquittal Notwithstanding the Verdict or for a New Trial was denied and the case is here by writ of error. We affirm.

Because of the nature of defendant's contentions a somewhat detailed summary of the evidence follows:

Between the evening of Friday, April 8, 1966, and Monday morning, April 11, 1966, the W. C. Sutton Company warehouse at 1709 West 13th Avenue, Denver, was illegally entered by breaking a window. 960 cartons (10 cartons to a case) of a special kind of power nail or cleat used by flooring contractors with a power nailer, were found to be missing on the latter date. Each carton weighed 10 pounds, was valued at $10 retail and $8 wholesale, was unmarked on the outside, was sealed with scotch tape on each of four sides and contained two yellow packing slips, one on the top and one on the bottom, giving information as to dates of processing, purchase number, and the Sutton Company invoice. The cases were on pallets and, being heavy, were usually handled by the company's forklift. To remove the two packing slips it was necessary to break the tape sealing, remove the top of the carton, and take the nails out.

An examination of the area at the rear of the building revealed tire prints plainly visible because of a recent dirt fill, where a truck had backed to the dock. In the approach the truck tire prints were lighter than those left on departure. They were discernible to West 13th Avenue where they were lost due to heavy traffic marks. Similar tracks were discovered on property about a block away leading to a building at 1223 Quivas Street where a 1960 Ford flat bed truck with tires which made

similar impressions were found. Occupants of that building were Colorado Cooperage Company, owner of the truck, and Colorado Flooring Corporation, defendant's business. The truck was kept in an area to which defendant had access and the keys were left in the truck. A search of the building revealed nothing.

Defendant had been in the contracting business since 1960, had bought quantities of lumber and building supplies, including this particular kind of nail or cleat from the Sutton Company — never more than 100 cartons, usually shipped directly to defendant's job sites at the rate of one carton per house. His purchases had dropped off drastically in 1966. Two other firms in the vicinity were known to deal in nails of this kind but dealt in small amounts of 10 to 15 cases only.

The following November the police officers learned that the defendant had a rented cabin in the mountains west of Denver approximately 1.7 miles south of Phillipsburg. A search of this property made after a lock on a garage was pried off, revealed a plywood structure at the end of the building. After prying a board from the front section of this structure, 875 cartons of the power nails or cleats of the kind taken from the Sutton Company warehouse were discovered. One of these cartons was admitted into evidence as Exhibit "C," over defendant's objection. The tape on each carton had been broken so that one could lift the top off. In checking between 80 and 100 of the cartons, not one packing slip was found. At the time the property was rented to the defendant in the spring, the structure at the rear of the garage had not been boarded up in the manner in which it was found by the police.

Defendant's testimony was to the following effect: That he was in the flooring business; operated as Colorado Flooring Company, and Colorado Hardwood Company; and had two warehouses. In January 1966 he broke his back, was hospitalized and decided to go out of the contracting business and into the distributing business.

He stated that he traded a Mr. Smith some oak flooring for 400 to 500 cartons of power nails in May 1966. Two months later he moved the nails to the cabin west of Denver because he was closing his warehouse and as he was having financial trouble, wanted to hide the nails from his creditors, and covered them so they would not be seen or fall down; that it was a common thing to open boxes after purchase to locate rust damage; he doubted that the nails received from Smith had packing slips, and stated that scotch tape was not always intact on the cartons he received from Mr. Smith, and that handling the cartons was sufficient to break the seal of tape.

Smith testified he traded 400 to 500 cartons of nails to the defendant and that he had bought them from the Sutton Company and another dealer; that he sometimes opened cartons and had not seen the slips.

In rebuttal Sutton testified he had sold approximately 215 cartons to the defendant in 1965, most of which were delivered directly to job sites and sold only 2 cartons to the defendant in 1966, and approximately 352 cartons to Smith's company.

■ I. Defendant contends that Exhibit "C," the carton of nails, though not objected to at the time of its admission, should have been stricken when defendant later moved to strike it from the evidence on the ground that it was never identified as the property lost in the felonious taking. *Lombardi v. People,* 124 Colo. 284, 236 P.2d 113.

The following language from *Pena v. People,* 147 Colo. 253, 363 P.2d 672, disposes of defendant's contention:
"No objection was made in the trial court when these exhibits were offered. Such being the state of the record, this assignment should not now be considered. *Will v. People,* 130 Colo. 590, 278 P.(2d) 178. However, we perceive no error in the admission of the aforementioned exhibits. In a case based on circumstantial evidence, wide latitude is necessarily allowed in the introduction of evidence. *Helser v. People,* 100 Colo. 371, 68 P.(2d) 543."

II. The second contention is that since the nails in defendant's possession were never identified as those which were stolen, there was insufficient evidence to support the jury's verdict, and *Lombardi v. People, supra,* is cited to support this argument.

This is not a case in which the similarity of goods is the *sole fact* upon which conviction could rest. Where the evidence shows that a defendant has in his possession goods of the same kind as those stolen, and there is additional evidence and other circumstances from which an inference can reasonably be made that the goods are the same as those previously stolen, or that the accused had knowledge of their stolen character, the case is properly submitted to the jury. *Pena v. People, supra.* See also *Commonwealth v. Lewis,* 190 Pa. Super. 591, 155 A.2d 410; *Commonwealth v. Meyers,* 154 Pa. Super. 8, 34 A.2d 916.

Here, in addition to the similarity of the nails there are a number of circumstances from which the jury could reasonably find that the nails were those stolen: Tracks of the truck, accessible for the defendant's use, led to his place of business; he knew the police were looking for the nails when they searched his nearest place of business, the only one known to them at the time; the nails were admittedly hidden by defendant in an unusual place, a remote mountain cabin, to avoid their being found, and not a place where they would likely be used; seals and packing slips from all cartons had been removed, thereby destroying any possibility of positive identification; the Sutton Company stocked large quantities of this kind of nails or cleats, which were of an unusual nature and customarily sold in smaller quantities of 10 to 15 cases; and defendant did not satisfactorily explain his possession of 875 cartons, a large quantity of these unusual items.

"For purposes of review, it will be assumed that the jury adopted that evidence, or any reasonable inference there-

from, which supports its verdicts." *Wilson v. People,* 143 Colo. 544, 354 P.2d 588.

There was sufficient evidence from which the jury could make the determination it did.

III. The defendant contends the trial court erred in giving the following instruction No. 13:

"What is meant by circumstantial evidence in criminal cases is the proof of facts and circumstances connected with or surrounding the commission of the crime charged; and if these facts and circumstances are sufficient to satisfy you of the guilt of the defendant beyond a reasonable doubt, such proof is sufficient to authorize a verdict of guilty.

"Where a conviction is sought on circumstantial evidence alone, as in this case, the People must not only show beyond a reasonable doubt that the alleged facts and circumstances are true, but the facts and circumstances must be such as are incompatible, upon any reasonable hypothesis, with the innocence of the defendant, and incapable of explanation upon any reasonable hypothesis other than that of the guilt of the defendant."

██ Defendant's tendered Instruction No. 1, refused by the court, is the same except for the insertion of the word "absolutely" before the word "incompatible" in the second paragraph. He argues the court erred because his form of the instruction was taken directly from *DeBaca v. People,* 160 Colo. 543, 418 P.2d 286.

This instruction as given is a settled one and has been approved by this court. *See Beeler v. People,* 58 Colo. 451, 146 P. 762. In *DeBaca, supra,* the addition of the word "absolutely" was not in issue and does not overrule the previous long-established use of the instruction given here, and its use would not have changed the plain meaning of the instruction.

██ The defendant further contends that since the court gave its Instruction No. 12 which instructed the jury that the exclusive possession of stolen property *recently* after the commission of a theft may be an in-

criminating circumstance, the court should have further given and instruction defining "recently" after the commission of a theft. The defendant tendered no such instruction, and brings it to our attention for the first time. This alone would be a sufficient answer. *See Pena, supra.*

The burglary and theft occurred April 8, 1966. The nails were found by the police in defendant's exclusive possession some 6 months and 2 weeks after the burglary. Defendant, by his own testimony, established that the nails came into his possession "somewhere around in May," and that some 2 months later he moved them to his mountain cabin.

No definite rule has been laid down regarding the meaning of "recent" except the conclusion that the meaning must be determined in the context of the facts of each particular case. In *Sitterlee v. People*, 67 Colo. 523, 186 P. 527, the question of whether 6 weeks constituted "recent" possession was held to be a question properly submitted to the jury. *See also People v. Nixon*, 414 Ill. 125, 111 N.E.2d 116; *Butz v. State*, 221 Md. 68, 156 A.2d 423.

The court did not err in failing to give an instruction which could only have stated that whether or not defendant's possession was recent, was a matter for the determination of the jury. This was in effect how the court left this matter with the jury.

The judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE not participating.