**No. 24753**

**Wesley Massey v. The People of the State of Colorado**
(498 P.2d 953)

Decided July 17, 1972.

168

Rollie R. Rogers, State Public Defender, Natalie S. Ellwood, Assistant, Kenneth J. Russell, Deputy, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Eugene C. Cavarliere, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

Wesley Massey, defendant, was convicted of aggravated robbery in a trial to the court and sentenced to the penitentiary. We affirm.

The People's evidence in this case shows Mr. Massey to have been an extremely cooperative defendant. Pursuant to an arrest warrant issued for failure to respond to Denver traffic citations, the defendant was arrested by Aurora police on the evening of January 14, 1969. He was then turned over to Detective Lawless of the Denver Police Department. Detective Lawless informed the defendant that he wished to question him regarding a number of aggravated robberies in the Denver area, gave him *Miranda* warnings and obtained Massey's signature on an advisement form.

In the course of questioning, Massey admitted the robbery with which he is here charged and executed the following consent to search:

"I, Wesley Massey, having been informed of my constitutional rights not to have a search made of the premises hereinafter mentioned without a search warrant, and of my right to refuse to consent to such a search, hereby authorize Det. R. Rennick 61-34, and D. Lawless 60-24, police officers of the Denver Police Department, City and County of Denver, State of Colorado, to conduct a complete search of a building and adjacent premises or buildings located at 2200 Dayton. These officers are authorized by me to take from this building and adjacent premises or buildings any letters, papers, materials, or other property which they may desire.

"This written permission is being given by me to the above named police officers voluntarily and without threats or promises of any kind.

(Signed) Wesley Massey"

Following this consent, Massey and the two detectives went to Massey's home whereupon the defendant produced a gun

and a billfold which were given to the officers.

Two days later a third detective informed Massey that a line-up was to take place. This detective called Massey's retained counsel and allowed Massey to converse with his counsel for about five minutes. Immediately following this conversation, the defendant executed the following:

"You are going to be in a line-up.

"If you wish, we will call the Public Defender at no cost to you, or an attorney, to request his presence at the line-up.

Signature

"Knowing what I am doing, I desire not to have the Public Defender or an attorney present at the line-up.

/s/ Wesley Massey

Signature"

The defendant argues that his arrest on a traffic charge was a mere sham or ruse effected solely to provide an opportunity for robbery interrogations. The defendant cites *Hill v. United States,* 418 F.2d 449 (D.C. Cir. 1968) and *Mills v. Wainwright,* 415 F.2d 787 (5th Cir., 1969) for the proposition that a trumped-up arrest conducted solely to further an unrelated investigation results in improper jurisdiction over the defendant and requires dismissal of the charges ultimately filed. The two cases cited by the defendant do not so hold and the argument is without merit.

■■ The attorney general argues that the defendant waived his right to challenge the legality of his arrest by his failure to comply with Crim. P. 12(b)(2) and (3), in not raising the issue before trial. We agree.

■ On the merits of the challenge itself, assuming the illegality of the arrest, what we said in *DeBaca v. Trujillo,* 167 Colo. 311, 447 P.2d 533, is dispositive.

"It is clearly established that once jurisdiction over the person of the accused is established in a criminal case, the court before which he is arraigned has power to adjudicate the questions raised by the charge and the pleas entered thereon. How, or under what circumstances, the accused came into the jurisdiction of the court is immaterial and has

no bearing upon the power of the Court to try the issues presented."

*See also People v. Griffith,* 130 Colo. 475, 276 P.2d 559.

■ The defendant, before interrogation, was advised of his Fifth and Sixth Amendment rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The defendant contends that the *Miranda* warning given related only to the traffic offense for which he was arrested. The trial court specifically found that he knowingly and intelligently signed the advisement form and consented to be interrogated concerning numerous robberies without the presence of counsel. There is sufficient evidence to support this finding. Thus, we do not reach defendant's contention.

Defendant's attack on the validity of the consent to search his home is two-pronged. He contends, first, that he signed it under threats and coercion. Second, he argues that the consent was ineffective since he was not sufficiently informed to knowingly and intelligently waive his Fourth Amendment rights.

■ On conflicting evidence the trial court found the fact adversely to defendant on the coercion issue. In support of his second contention, he claims that in order to have an effective consent to search, one must be advised of his *right to silence* and his *right to counsel,* as well as the right to refuse a warrantless search, relying on *United States v. Blalock,* 255 F. Supp. 268 (E.D. Pa. 1966). We do not read *Blalock* to impose more stringent requirements for the waiver of Fourth Amendment rights than *Phillips v. People,* 170 Colo. 520, 462 P.2d 594. Here the trial court found that the defendant was advised that he could refuse to give permission to search without a warrant and that he voluntarily consented to the search. The evidence supported this finding. There was no Fourth Amendment violation. *Phillips v. People, supra.*

■ Defendant, lastly contends that he did not effectively consent to being placed in a line-up, because the consequences of the line-up and the function of counsel were not explained to him. This point is not well taken. The trial court

found that the witness who viewed the line-up had ample opportunity at close range and under adequate lighting at the scene of the crime to enable him to identify the defendant. Accordingly, the court held that the in-court identification was not tainted and was admissible under *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. The line-up preceded the filing of charges. *See Kirby v. Illinois,* 40 U.S.L.W. 4607 (U.S. June 7, 1972) (No. 70-5061).

The judgment is affirmed.

MR. JUSTICE HODGES not participating.