## No. 25591

**The People of the State of Colorado v. Frank Hancock**
(525 P.2d 435)

Decided August 6, 1974.

John P. Moore, Attorney General, John E. Bush, Deputy, E. Ronald Beeks, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Lee Belstock, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

This is an appeal from convictions of aggravated robbery, 1967 Perm. Supp., C.R.S. 1963, 40-5-1, and assault with a deadly weapon, C.R.S. 1963, 40-2-34, both of which arise out of the same incident.

On February 19, 1971, the manager of a supermarket was robbed at gunpoint by three men. Two of the robbers beat the manager in the store and parking lot while a third remained in the getaway car. As the car drove away, an eyewitness viewed the defendant in the back seat of the auto. The getaway car was positively identified by three witnesses who testified as to its make and license number. It was located close to the scene of the robbery. Found in the car were three items which connected the defendant with the crime: (1) a nylon stocking knotted in such a way that it could have been used as a mask; (2) hairs located in the mask which were shown at trial to be similar in type and composition to the hair of this defendant; and (3) a receipt from a photography shop which was made out to this defendant. In addition, rolled coins totaling eighty-one dollars and a pistol were found in the defendant's home following a search by police officers.

I.

As his first ground for reversal, Hancock argues that the trial court should have suppressed the items taken from his home as they were the fruits of an illegal warrantless search. Apparently conceding that a third person may consent to such a search, *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39. L.Ed.2d 242 (1974), he nevertheless contests the trial court determination that the consent was voluntary with full knowledge of the right to withhold consent and to demand a warrant.

The facts revealed at the hearing on suppression show that police officers went to the defendant's home a few days after the robbery. They met the defendant's wife who was there with a child. The officers told the defendant's wife that they believed he was involved in a robbery and wished to search

the home for evidence of that crime. Mrs. Hancock was further informed that she had the right to refuse such entrance and that if she refused a warrant could and would be sought. Following this discussion, Mrs. Hancock signed a search waiver form which explained her right to refuse the search. This form had previously been read to her while she read along on an identical form. She signed the search waiver form and orally consented to the search. The search was then conducted.

It is now settled that a consent search is outside the ambit of traditional fourth amendment warrant requirements. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). To secure a consent search, however, the officers may not use any methods which coerce the occupant into waiving fourth amendment rights. The consent must be voluntary. *Phillips v. People,* 170 Colo. 520, 462 P.2d 594 (1969). Whether or not the consent which is given in a particular case is voluntary is a question to be determined by the court in light of the totality of the circumstances surrounding that consent, *Capps v. People,* 162 Colo. 323, 426 P.2d 189 (1967), and the overriding inquiry is whether the consent is intelligently and freely given. *Phillips, supra.* The burden of proof in that determination rests firmly on the People. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

It is clear that the evidence supports the court's finding of an intelligent and free waiver. The officers informed Mrs. Hancock that they had reason to believe her husband was involved in a crime; they told her she possessed the right to refuse their entrance; she illustrated her consent by signing a waiver form that was read to her. That she was told a warrant would be sought if her consent was not obtained does not negate the evidence which strongly supports the trial court's finding of consent. *People v. Reyes,* 174 Colo. 377, 483 P.2d 1342 (1971).

II.

As the second ground for reversal, appellant argues that a mugshot of a confederate, which was admitted over defense

objection, was highly irrelevant and prejudicial. We do not agree.

The evidence was for the purpose of showing a connection between the defendant and the getaway car, presumably to further tie him to the crime. Accordingly, the People called a Nebraska police officer as a witness. He testified that the confederate, one Stephens, was a known criminal in Omaha. For purposes of identification of Stephens, a mugshot of him was admitted. It was also shown that Stephens, who had purchased the getaway car, had stayed in the defendant's home at the time of the robbery.

Defendant contends the highly prejudicial effect of the mugshot outweighs any probative value and renders the photo irrelevant. We believe the contrary is the case. Aside from a tangential connection with the defendant, the photo itself does little to prejudice this defendant. The facts of identity and the purchase of the car, on the other hand, were highly probative. We hold, therefore, that the trial court did not err in admitting the photograph.

## III.

As his third ground for reversal, appellant challenges his conviction for assault with a deadly weapon. He argues that conviction arises out of the same transaction as his conviction for aggravated robbery and cannot stand without violating the double jeopardy provisions of the United States and Colorado Constitutions. U.S. Const. amend. V; Colo. Const. Art. II, Sec. 18.

The principal force of appellant's argument is supplied by *People v. Bugarin,* 181 Colo. 62, 507 P.2d 875 (1973), wherein we held double jeopardy barred the convictions of aggravated robbery, 1967 Perm. Supp., C.R.S. 1963, 40-5-1(2) and assault with a deadly weapon, C.R.S. 1963, 40-2-34, where both arose out of the same transaction. Our reasoning in *Bugarin* was that the doctrine of merger as encompassed in the double jeopardy clause would not allow conviction for both crimes, because the state in effect is punishing one criminal act twice. *See Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); *Blockburger v.*

*United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

█ The test of whether the two offenses are committed by the same act was simply stated in *Bugarin:*

"* * * a single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."

Summarized, this test holds there is merger of the offenses when the elements of each statute, when compared, require proof of the same facts.

█ As *Bugarin* recognized, a corollary proposition is that a defendant cannot be convicted of an offense which is a lesser-included offense of another crime of which he was also convicted. The two crimes merge. In that regard, *People v. Rivera,* 186 Colo. 24, 525 P.2d 431 has direct application. In *Rivera,* we clarified prior authority and held that whether an offense was lesser included was to be determined by comparing the two statutes involved. If it is impossible to commit the greater offense without also having satisfied every essential element of the lesser offense, then that offense is lesser included. *See also, Daniels v. People,* 159 Colo. 190, 411 P.2d 316 (1966). That test must be applied here as well.

█ The information for aggravated robbery here involved the following sections of the 1967 Perm. Supp., C.R.S. 1963, 40-5-1:

"(1) Robbery is the felonious and violent taking of money, goods, or other valuable thing from the person of another by force or intimidation. * * *

"(2) * * *

"(c) He wounds or strikes the person robbed or any other person with a dangerous weapon, or by use of force, threats, or intimidation puts the person robbed or any other person in reasonable fear of death or bodily injury, *with a weapon;* * * *" (Emphasis added.)

In C.R.S. 1963, 40-2-34, assault with a deadly weapon in pertinent part is defined as:

"* * * An assault with a deadly weapon, instrument or other thing, with an intent to commit upon the person of another a bodily injury where no considerable provocation appears * * *."

Comparing these two statutes, it is evident that it is impossible to commit aggravated robbery as delineated in 1967 Perm. Supp., C.R.S. 1963, 40-5-1(1) and (2)(c), without also having committed an assault with a deadly weapon. Both relevant portions of the statutes require the use of a weapon. The greater offense, involving as it does the violent taking and use of force, threats or intimidation placing the victim in reasonable fear of death or bodily harm, necessarily satisfies the requirement that one who assaults with a deadly weapon possess the intent to commit a bodily injury. We believe it is impossible to commit an aggravated robbery as set forth in this subsection without contemporaneously perpetrating an assault with a deadly weapon. *See People v. Velasquez,* 178 Colo. 264, 497 P.2d 12 (1972). Accordingly, we hold that, the offense being lesser-included, double jeopardy bars a conviction for both crimes. The judgment of conviction for assault with a deadly weapon is therefore reversed and remanded with directions to vacate the conviction. On the remaining robbery charge, the judgment of conviction and sentence are affirmed.

Affirmed in part and reversed in part.

MR. JUSTICE GROVES does not participate.