No. 27748

**The People of the State of Colorado v. David Hayhurst**

(571 P.2d 721)

Decided November 21, 1977.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, J. E. Losavio, Jr., District Attorney, Warren T. Marshall, Deputy, for plaintiff-appellant.

James H. Frasher, Jr., Michael G. Beckner, for defendant-appellee.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

This is an interlocutory appeal from a district court ruling suppressing physical evidence and an incriminating statement. We reverse.

The suppression order was based on the following findings of fact: On the evening of March 15, 1975, the appellee, David Hayhurst, then a juvenile, attended a swimming party also attended by Mark Cisneros, then fifteen. Hayhurst invited Cisneros to go with him in a van to a remote country road "to see some drag races." At about 12:30 a.m., March 16, Hayhurst and a companion allegedly beat Cisneros severely with a hammer and pushed him out of the van. Cisneros managed to get help at about 4:00 a.m., and was taken to a hospital for treatment. Sheriff's officers, acting on information from Cisneros and a friend, found that a van owned by Hayhurst's father matched the van described by Cisneros.

The officers went to the Hayhurst residence at about 5:30 a.m. and informed the Hayhursts why they were there. Hayhurst's father, a physician, stated that he owned the van and that his son had used it with his permission the night before, and that he wanted to do whatever he could to find out what had happened. An officer then read Hayhurst and his father their *Miranda*[1] rights, and they stated that they understood these rights. Nothing was said, however, about the right to refuse consent for a search.

When the officers asked if they could look in the van, young Hayhurst, at his father's direction, opened a side door. The officers discovered spattered blood, and requested that the van's rear doors be opened. Before the two back doors were opened, an officer read the appellee and his father another *Miranda* warning, but again nothing was said about any right to refuse to consent to a warrantless search of the vehicle. Upon opening the rear van doors, the officers discovered a fresh pool of blood, a hammer bearing blood and hair particles, and other evidence. A detective called to the scene took blood and hair samples, photographs, and the hammer. No search warrant was ever obtained.

At 9:14 a.m., at the sheriff's office, David Hayhurst, in the presence of his father and two officers, was given a written advisement of his rights. He denied having been involved in the incident and declined making a statement at that time. After being booked, he was released to his parents.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Later that day, however, David's mother telephoned to inform the sheriff's office that David wanted to make a statement. At 12:45 p.m. an officer was dispatched to the Hayhurst residence where he met with David and both of his parents. In the presence of all three the officer said, "Are you aware that I advised you of your rights? Do you understand I have advised you of your rights and do you understand this. . .?"[2] David then made an incriminating statement, which the officer recorded.

At the suppression hearing, the appellee sought to suppress both the evidence obtained from the van and the recorded statement.

The trial court held that even though Hayhurst and his father had voluntarily consented to the search of the van, the evidence had to be suppressed because they had not been expressly advised that they could refuse to consent to a warrantless search. In support of this holding the court relied primarily on *Phillips v. People*, 170 Colo. 520, 462 P.2d 594 (1969).

Regarding the incriminating statement, the trial court held that section 19-2-102(3)(c)(I), C.R.S. 1973, required that a juvenile be fully advised of his rights *immediately before* making a statement. The court then ruled that the officer's reference to the written *Miranda* warnings given earlier in the day failed to comply with the statutory requirements.

We do not agree with either holding.

### I. *Consent to Search the Van*

The burden rests upon the prosecution to prove that consent to a warrantless search was given voluntarily, knowingly, and intelligently. *People v. Wieckert*, 191 Colo. 511, 554 P.2d 688 (1976); *People v. Huffman*, 189 Colo. 459, 541 P.2d 1250 (1975); *People v. Hancock*, 186 Colo. 30, 525 P.2d 435 (1974). Whether a valid consent has been given in a particular case is to be determined by the court in light of the "totality of circumstances" surrounding the consent. *People v. Wieckert, supra*; *People v. Hancock, supra*; *Phillips v. People, supra*; *Capps v. People*, 162 Colo. 323, 426 P.2d 189 (1967).

In the instant case, the trial court found that the Hayhursts had in fact voluntarily consented to the search. Ample evidence supports that finding. Police officers testified that the appellee's father, the van's owner, affirmatively cooperated, stated that he wished to "get to the bottom of the matter," and directed his son to open the van for the officers' inspection. Nonetheless, the trial court held that it could not admit the evidence absent proof that the police expressly advised the father of his right to refuse consent to the warrantless search.

We have not previously addressed the specific issue whether the police are required expressly to warn a property owner that he has a right to decline consent to search his property in cases where the owner voluntarily

---

[2]The most recent full *Miranda* warning had been given that morning at 9:14 a.m.

consents to the search. While it is true that in the case primarily relied upon by the trial court and the appellee, *Phillips v. People, supra*, an advisement of the right to refuse consent was given, that case does not hold that such an advisement is indispensable in all cases. *See also People v. Hancock, supra*; *Massey v. People*, 179 Colo. 167, 498 P.2d 953 (1972); *People v. Reyes*, 174 Colo. 377, 483 P.2d 1342 (1971); *Capps v. People, supra*; *Cf. People v. Sanchez*, 184 Colo. 25, 518 P.2d 818 (1974).

■ The United States Supreme Court[3] and many state courts[4] have held that such an express advisement is not required by either the United States Constitution or by applicable state constitutions. *See generally* Weinreb, *Generalities of the Fourth Amendment*, 42 U.Chi.L.Rev. 47 (1974-75). Our state constitution and statutes, of course, may impose on police activity greater or additional restrictions than those minimally mandated by the federal constitution. *People v. Hoinville*, 191 Colo. 357, 553 P.2d 777 (1976). In this case, however, it is not necessary to impose another warning requirement on police officers. The People already have the heavy burden of proving the voluntariness of a consent to search. While proof that an express advisement was given in a particular case certainly would lighten that burden, and such a warning — if given — would be a persuasive factor to be considered in determining voluntariness, other evidence is often quite adequate to prove that a consent was voluntary, knowing, and intelligent.

■ Taking the instant case as an example, it would serve no useful purpose to suppress the evidence simply because no advisement was given, when the evidence is overwhelming that the Hayhursts voluntarily consented to the search. The officers simply asked if they could look in the van and were met with affirmative cooperation. There is no evidence that the officers claimed any right to search the vehicle,[5] exhibited any signs of force,[6] or attempted to deceive the Hayhursts.[7] Given these facts, we conclude that the Hayhursts' consent was voluntary, and no additional advisement was necessary.

---

[3]*United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

[4]*See, e.g., People v. Dahlke*, 257 Cal. App.2d 82, 64 Cal. Rptr. 599 (1968); *State v. Custer*, 251 So.2d 287 (Fla. App. 1971); *Woodruff v. State*, 233 Ga. 840, 213 S.E.2d 689 (1975); *State v. Oldham*, 92 Idaho 124, 438 P.2d 275 (1968); *State v. McCarty*, 199 Kan. 116, 427 P.2d 616 (1967), vacated in part on other grounds, 392 U.S. 308, 88 S.Ct. 2065, 20 L.Ed.2d 1115; *Hohnke v. Commonwealth*, 451 S.W.2d 162 (Ky. App. 1970); *State v. Andrus*, 250 La. 765, 199 So.2d 867 (1967); *Morgan v. State*, 2 Md.App. 440, 234 A.2d 762 (1967); *State v. Witherspoon*, 460 S.W.2d 281 (Mo. 1970); *State v. Forney*, 181 Neb. 757, 150 N.W.2d 915 (1967); *State v. Johnson*, 68 N.J. 349, 346 A.2d 66 (1975); *State v. Douglas*, 260 Or. 60, 488 P.2d 1366 (1971).

[5]*Cf. Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

[6]*Cf. People v. Huffman*, 189 Colo. 459, 541 P.2d 1250 (1975).

[7]*Cf. People v. Coghlan*, 189 Colo. 99, 537 P.2d 745 (1975).

## II. *The Incriminating Statement*

The question whether the trial court erroneously suppressed the appellee's incriminating statement turns on the interpretation of section 19-2-102(3)(c)(I), C.R.S. 1973, which provides:

"No statements or admissions of a child made as a result of interrogation of the child by a law enforcement official concerning acts alleged to have been committed by the child which would constitute a crime if committed by an adult shall be admissible in evidence against that child unless a parent, guardian, or legal custodian of the child was present at such interrogation and the child and his parent, guardian, or legal custodian were advised of the child's right to remain silent, that any statements made may be used against him in a court of law, the right of the presence of an attorney during such interrogation, and the right to have counsel appointed if so requested *at the time of the interrogation*; except that, if a public defender or counsel representing the child is present at such interrogation, such statements or admissions may be admissible in evidence even though the child's parent, guardian, or legal custodian was not present." (Emphasis added.)

The trial court apparently construed the words "at the time of the interrogation" to modify all the prior language in the statute regarding advisement of rights, and thus to require a complete, fresh advisement *at the time* a statement is obtained without regard to warnings previously given. We do not agree with the trial court's interpretation.

The rights set out in this section are derived directly from the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to counsel. *People v. Knapp*, 180 Colo. 280, 505 P.2d 7 (1973). The statute is designed to provide the child parental guidance during police interrogations, and thereby provide at least some assurance that the child's waiver of rights will be made knowingly and intelligently. *People v. Maes,* 194 Colo. 235, 571 P.2d 305; *People in the Interest of L.B.,* 33 Colo. App. 1, 513 P.2d 1069 (1973). The question presented is whether those purposes have been fulfilled.

We do not construe the statute to require, in every case, a repetitive advisement of rights immediately before any statement is taken.[8] The words "at the time of the interrogation" refer to the request for appointment of counsel, and do not refer back to all the rights listed. Nor is it necessary to read such a requirement into the statute to make its protections meaningful. Since these statutory rights are based upon the Fifth and Sixth Amendment rights, the People have the burden to prove that there has been a voluntary, knowing and intelligent waiver. *People v.*

---

[8]This is not to imply that a significant time lapse between an advisement of rights and an interrogation would never invalidate a statement. The facts of each case must be considered to determine whether a valid waiver has been made.

*Stephens*, 188 Colo. 8, 532 P.2d 728 (1975).

■ Here the People have clearly met that burden. The appellee and his father were warned of their rights three times, the last full warning having been given less than four hours before the incriminating statement was taken. The interrogating officer reminded both father and son of the prior advisements and both indicated that they remembered and understood. Further evidence of the voluntary nature of the waiver is the fact that the appellee's mother called the sheriff's office and requested that an officer be dispatched. The record is replete with convincing evidence that both David and his father were fully aware of David's rights and these rights were knowingly waived. There is no evidence of coercion or deceit by the officers. *Cf. People v. Coghlan, supra.*

■ Finally, the appellee argues that his father was not an adequate representative of his interests, since there was evidence of hostility between the two. Where the interests of a parent and child are adverse, the parent is disqualified from acting as the advising party under 19-2-102, *supra. See, e.g. People in the Interest of P.L.V.*, 176 Colo. 342, 490 P.2d 685 (1971). Here, however, the fact that the father was upset with his son's possible involvement in a crime does not mean that their interests were necessarily adverse. *Cf. People in the Interest of P.L.V., supra* (juvenile suspected of burglarizing his parents' home).

We conclude that the appellee's rights were adequately protected.

Accordingly, the ruling of the trial court is reversed and the cause remanded for further proceedings consonant with the views here expressed.