The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Ibrahim ELKHATIB,
Defendant-Appellant.

No. 80SA247.

Supreme Court of Colorado,
En Banc.

July 20, 1981.

Rehearing Denied Aug. 17, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Mary E. Ricketson, Asst. Atty. Gen., Denver, for plaintiff-appellee.

R. D. Jorgensen, Pueblo, for defendant-appellant.

QUINN, Justice.

The defendant, Ibrahim Elkhatib (defendant), appeals his conviction for first degree arson, section 18–4–102, C.R.S.1973 (1978 Repl.Vol. 8). His principal contention is that the trial court erroneously denied his motion to suppress evidence seized as a result of the warrantless search of his grocery store after a fire of suspicious origin had been extinguished. Additionally, he alleges as error the admission of evidence relating to a recent increase of insurance coverage on the contents of his store before the fire and the court's denial of his motion for judgment of acquittal. We affirm the conviction.

### I.

The defendant was charged with first degree arson of the building of Ray Haga located at 1800 Santa Fe Drive in Blende, Colorado.[1] The defendant leased the building from Haga, operated a retail grocery business on the premises and lived in an apartment above the store. On November 14, 1977, the evening of the fire, the defendant locked the store at 7:00 p. m. and then he went to the house of his next door neighbor, Ms. Wanda Weldon, for dinner. At about 8:40 p. m. a man who lived across the street telephoned the fire department about the fire in the store. Firefighters shortly thereafter responded to the scene and gained entry into the building by knocking out the window of the front door.

Officer Rusick of the Pueblo County Sheriff's Department arrived at the store about 9:00 p. m. while the firefighters were still inside tending to their duties. The fire caused significant damage to the building[2] and, after the smoke had somewhat cleared, Rusick went inside to investigate its origin. In the southwest corner of the store he found a pile of papers saturated with what smelled like a flammable solvent. Believing this pile to be the origin or "hot spot" of the fire and suspecting arson, Rusick telephoned the sheriff's department for investigative assistance. Officer Martinez and other officers arrived about 15 minutes thereafter and, while fire department personnel were still on the premises, they entered the store to search for and secure evidence. The defendant at this time was inside the store attempting to protect some frozen meat and examining the damage. Officer Martinez seized some scrapings from the "hot spot" and took some photographs of the scene. Due to the heat and darkness, however, the officers decided to terminate their investigation and return during daylight hours.

The next day, November 15, 1977, Officer Martinez went to the defendant's apartment above the grocery store and told him that he wished to examine the store further. Martinez did not consider the defendant a suspect at this time. Rather, based on a conversation with the defendant on the evening of the fire, Martinez believed the fire might have been started by one of the defendant's ex-employees seeking revenge against him. Martinez did not advise the defendant of his right to refuse his consent to any further search. The defendant was cooperative with the officers and did not object to their returning on the following morning to search the store.

---

1. First degree arson is a class 3 felony and is defined in section 18–4–102(1), C.R.S.1973 (1978 Repl.Vol. 8), as follows:

   "A person who knowingly sets fire to, burns, causes to be burned, or by the use of any explosive damages or destroys, or causes to be damaged or destroyed, any building or occupied structure of another without his consent commits first degree arson."

   The defendant was also charged with third degree arson, section 18–4–104, C.R.S.1973 (1978 Repl.Vol. 8), and attempted theft of $200 or more, sections 18–2–101 and 18–4–401, C.R.

   S.1973 (1978 Repl.Vol. 8), both of which arose out of the same transaction charged in the first degree arson count. These other counts were dismissed during the course of proceedings below.

2. The owner, Mr. Haga, testified that the damage to the building was approximately $6,000. There was also considerable damage to the inventory and fixtures in the store but the dollar amount of this damage was not clearly established at trial.

On the morning of November 16, the defendant unlocked the door to the store and permitted Officer Martinez and other officers to enter and search. The officers located an electrical timer under the pile of papers believed to be the origin of the fire. The electrical timer was turned over to the Colorado Bureau of Investigation for examination.[3]

Prior to trial the defendant moved to suppress all evidence seized during the searches on the evening of the fire and on the morning of November 16, as well as all visual observations and evidence derived from these searches. Relying on *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), the trial court denied the motion to suppress any evidence seized on the evening of the fire,[4] and the defendant does not contest this aspect of the trial court's ruling. With respect to the search of the store on the morning of November 16, the court concluded that the defendant voluntarily consented to that search and therefore the court denied the motion to suppress the electrical timer and any evidence derived therefrom.[5] It is this aspect of the suppression ruling which the defendant contests on this appeal.

Trial was to the court. The electrical timer was admitted into evidence. The defendant stipulated to the qualifications of CBI Agent James Jordan as an expert in arson investigations. It was Jordan's opinion that the timer was deliberately used to ignite the fire. He testified that the timer could be set to activate the heating unit at a predetermined time by plugging an extension cord into an outlet, and attaching the lead line of the timer to the extension cord, and then securing another line from the terminal on the timer to the electrical heating unit, thereby igniting the flammable paper which had been piled over the hearing unit.

The prosecution also presented evidence that the defendant told the police he had the only key to the store and was the last person to leave the premises before the fire. An inspection of the store immediately after the fire disclosed that all doors had been locked and there was no sign of an unlawful entry into the building. While the defendant was at Ms. Weldon's home for dinner, she observed someone knocking on the door of the store in an apparent effort to give warning of the fire. The defendant left Ms. Weldon's home, walked to the store and returned shortly thereafter. In spite of clearly visible smoke coming out of the building, the defendant made no effort to call the fire department but rather called the owner of the building.

---

3. After the search on the morning of November 16, 1977, Officer Martinez learned from another law enforcement officer that the defendant was a suspect in an arson and cigarette highjacking in Denver. Thereafter Martinez considered the defendant an arson suspect in connection with the burning of his store.

4. In *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), a fire broke out shortly before midnight on January 21, 1970, in the defendants' furniture store. The fire chief seized two plastic containers of flammable liquid when the blaze was nearly extinguished. More evidence was discovered and seized by fire officials and a police detective early the next morning, January 22, approximately four hours after the fire had been completely extinguished. Still more evidence was discovered and photographed three weeks later in a search by the police. All the searches were conducted without warrant and without the consent of the defendants. The United States Supreme Court upheld the first two seizures on the basis of exigent circumstances and the plain view doctrine. However, the Court held the last entry, some three weeks after the fire, invalid due to the failure to obtain a warrant and ordered any evidence obtained therefrom suppressed.

5. During the afternoon of November 16, 1977, Officer Martinez and another officer entered the store again, seized additional evidence consisting of an electrical cord and a burner to a hot plate, and took photographs. This search was not pursuant to warrant and no additional consent had been obtained from the defendant. The trial court suppressed the evidence obtained from this search because, in the court's words, "the Defendant was now a suspect [see note 3, supra], he should have been so advised and advised of his right to refuse the officers [sic] entry, or a warrant should have been obtained...." This aspect of the trial court's suppression ruling is not before us and we express no opinion on its propriety.

The prosecution also presented testimonial and documentary evidence establishing that in May 1977 the defendant increased the insurance coverage on the inventory and fixtures of the store from $25,000 to $45,000. Approximately five days before the fire he telephoned the insurance company and requested a copy of his policy. On the day after the fire he notified the company of a fire loss and subsequently filed a written claim for the policy limit of $45,-000.[6]

The trial court denied the defendant's motion for a judgment of acquittal at the close of the prosecution's case and, at the conclusion of all the evidence, found the defendant guilty as charged.

## II.

■ We first address the defendant's argument that the trial court erred in denying his motion to suppress both the electrical timer seized during the morning search on November 16, 1977, and the testimony of Officer Jordan about the use of this instrument in starting the fire. The trial court expressly found that although Officer Martinez did not inform the defendant of his right to refuse permission to search his store, the defendant nevertheless voluntarily consented to the search. The defendant's argument centers on the proposition that the failure of the police to advise him of his right to refuse consent vitiated the voluntary nature of the consent actually given. We conclude that the trial court applied the proper standard of voluntariness in denying the defendant's motion to suppress and its determination is fully supported by the evidence.

In *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the United States Supreme Court held that when the state attempts to justify a search on the basis of consent, it must demonstrate that the consent was voluntarily given and was not the result of duress or coercion.

*Accord, e. g., People v. Wieckert*, 191 Colo. 511, 554 P.2d 688 (1976); *People v. Hancock*, 186 Colo. 30, 525 P.2d 435 (1974). "Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Schneckloth v. Bustamonte, supra*, 412 U.S. at 249, 93 S.Ct. at 2059, 36 L.Ed.2d at 875; *accord, e. g., People v. Hayhurst*, 194 Colo. 292, 571 P.2d 721 (1977).

■ The ultimate test of voluntariness in the context of consent searches is whether the consent is "the product of an essentially free and unconstrained choice by its maker." *Schneckloth v. Bustamonte, supra*, 412 U.S. at 225, 93 S.Ct. at 2047, 36 L.Ed.2d at 862. In this case there was no evidence of coercion, either in the form of an officer's claim of lawful authority to search regardless of the defendant's permission, or a threat or subtle promise calculated to flaw the defendant's judgment. *See, e. g., United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Nor is there any evidence of deception as to the officer's stated purpose in entering the store. *Cf. McCall v. People*, Colo., 623 P.2d 397, 403 (1981) ("Where . . . entry into the home is gained by a preconceived deception as to purpose, consent in the constitutional sense is lacking.") Indeed, the evidence was uncontradicted that the defendant at all times was extremely cooperative with the police, made no objection to the search, acceded to the officer's request to search his store and unlocked the door for the entry and search. The trial court's determination that the defendant voluntarily consented to the search on the morning of November 16, 1977, is amply supported by the record and the de-

---

**6.** Although there was considerable damage to the contents and interior of the store, no evidence was presented on the dollar amount of that damage, other than the defendant's claim of $45,000. According to a financial statement of Associated Grocers Accounting Department, which was admitted into evidence as a prosecution exhibit, the value of the defendant's inventory as of the last day of October 1977 was $23,384.49.

fendant's motion to suppress properly was denied.

### III.

■ We next consider the defendant's argument that evidence of his increase of insurance coverage from $25,000 to $45,000 was improperly admitted because it had no relevancy to the issues of the case. The trial court admitted this evidence on the basis that it tended to prove motive on the part of the defendant to burn his store. We find no error in this ruling.

■ Motive is a state of mind personal to the party harboring it and is a circumstance tending to establish the requisite *mens rea* for a criminal act. *See, e. g., People v. Corbett*, Colo., 611 P.2d 965 (1980); *Smaldone v. People*, 103 Colo. 498, 88 P.2d 103 (1939). In *People v. Calvaresi*, 198 Colo. 321, 600 P.2d 57 (1979), we addressed an issue somewhat similar to that raised here. Calvaresi was charged with arson of a nightclub. He was the night manager of the club and his father was the general manager of and a principal investor in the club. In holding that the trial court properly admitted evidence of the club's financial trouble and its $65,000 insurance policy which the defendant had sold to the nightclub when he was formerly in the insurance business, we stated:

"Evidence of motive is admissible when relevant to the issue of guilt. [Citation omitted] The basic test of the logical relevancy of evidence is 'whether it renders the claimed inference more probable than it would be without the evidence.' [Citation omitted] The evidence in question meets this test because it was offered in combination with testimony concerning the close business association between Calvaresi and his father and Calvaresi's desire to insure the financial success of his father's investment in the [business]. The evidence offered is logically relevant to the issue of Calvaresi's motive." 198 Colo. at ——, 600 P.2d at 58–59.

So too, here, the challenged evidence tends to prove a motive on the part of the defend-

ant in burning his store—the acquisition of $45,000 in insurance proceeds—and, as such, it was properly admitted at trial.

### IV.

Lastly the defendant argues that the trial court erred in denying his motion for a judgment of acquittal at the end of the prosecution's case. We disagree.

■ To withstand a motion for a judgment of acquittal the prosecution has the burden of presenting evidence which, when viewed as a whole and in a light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime beyond a reasonable doubt. *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973); *accord, People v. Calvaresi, supra; People v. Martinez*, 191 Colo. 428, 533 P.2d 774 (1976). The substantial evidence test affords the same status to circumstantial evidence as to direct evidence, and an exclusively circumstantial case need not exclude every reasonable hypothesis other than guilt to withstand a motion for a judgment of acquittal. *People v. Bennett, supra.*

■ In this case the prosecution's evidence, when appropriately viewed, established the following facts: the fire was deliberately ignited by someone attaching a heating device to the electrical timer; the defendant was the last person to leave the store prior to the outbreak of the fire and had the only key to the store; no one unlawfully entered the store after the defendant locked it for the evening; the defendant made no effort to call the fire department when it was apparent to him that the building was burning; he had a likely motive to burn the store due to the recently increased insurance coverage on the fixtures and inventory therein; and he made a claim for the limits of insurance coverage after the fire was extinguished. The prosecution's evidence was sufficient to permit a reasonable person to conclude that the defendant's guilt of first degree arson was proven beyond a reasonable doubt. Accord-

ingly, the trial court did not err in denying the defendant's motion for a judgment of acquittal.

The judgment is affirmed.