The PEOPLE of the State of Colorado, Petitioner-Appellee,

In the Interest of J.F.C., a Child, Respondent-Appellant.

No. 81CA0800.

Colorado Court of Appeals, Div. II.

Sept. 9, 1982.

Rehearing Denied Oct. 7, 1982.

Certiorari Denied Feb. 22, 1983.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Nathan B. Coats, Asst. Atty. Gen., Denver, for petitioner-appellee.

Allan Lenefsky, Wheat Ridge, for respondent-appellant.

BERMAN, Judge.

In this juvenile delinquency proceeding, respondent J.F.C. appeals the denial by the juvenile court of his motion to "withdraw his guilty plea" (plea of admission to the allegations of the petition). We affirm.

On June 9, 1980, at the advisement hearing conducted pursuant to C.R.J.P. 3, J.F.C. admitted to committing both counts of the petition, second degree forgery and conspiracy to commit forgery. Prior to his sentencing, respondent filed a motion to withdraw the plea of admission to the charges and after a hearing, the juvenile court denied the motion, which ruling is the subject of this appeal.

Defendant's sole issue on appeal is that his admission to the allegations in the petition made before a commissioner of the juvenile court in Adams County, § 19–1–110, C.R.S.1973 (1981 Cum.Supp.), were not knowingly or intelligently made and that neither he nor his mother understood what occurred at the hearing in which he admitted his guilt. We disagree.

■ C.R.J.P. 1, C.R.S.1973 (1981 Cum. Supp.) states that "[p]roceedings in delinquency shall be conducted in accordance with the Colorado Rules of Criminal Procedure except as otherwise provided by statute or these rules." Thus, the Rules of Criminal Procedure are applicable here. The advisement hearing in a juvenile delinquency proceeding is a critical stage of the proceedings against the juvenile, and, accordingly, the constitutional guarantee of due process is applicable thereto. *People v. M.A.W.,* 651 P.2d 433 (Colo.App.1982). The standards guaranteeing the juvenile's constitutional rights are codified in C.R.J.P. 3.

C.R.J.P. 3 is the substantial equivalent of Crim.P. 11, so that we analogize to it and the cases dealing with a guilty plea withdrawal. *See also* Crim.P. 32(e) on withdrawal of guilty plea. The most significant difference in the rules is that the juvenile rules specifically state that both the child and his parents will be fully advised by the court and that *they* understand the applicable constitutional rights.

■ Therefore, of critical significance to any knowing and intelligent waiver of a constitutional right by a juvenile is the presence of the parent. C.R.J.P. 3. *See also People v. McAnally,* 192 Colo. 12, 554 P.2d 1100 (1976). The parent is there to assure the juvenile is provided with parental guidance and moral support, as well as some assurance that any waiver of the juvenile's rights is made knowingly and intelligently. *See People v. Hayhurst,* 194 Colo. 292, 571 P.2d 721 (1977); *People in Interest of L.B.,* 33 Colo.App. 1, 513 P.2d 1069 (1973). *See also IJA/ABA, Juvenile Justice Standards Relating to Pretrial Court Proceedings* § 6.5 (Commentary). The role of the parent will vary depending upon the age, experience, and ability of the juvenile. *See Standards Relating to Pretrial Court Proceedings* § 6.1. However, it is not sufficient to have the presence of a parent when that parent is unable to function in the adviser role or if the parent's interests are adverse to that of the child. *People in Interest of L.B., supra.*

Here, the record demonstrates that the commissioner first complied with C.R.J.P. 3(a) concerning the understanding of the allegations of the petition and of J.F.C.'s constitutional rights. The decision to waive counsel consisted of the following pertinent exchanges between the commissioner, J.F.C., and his mother, Mrs. C.:

"COMMISSIONER WATTS: ... did you folks see a lawyer before you came in today?

MRS. C.: No, ma'am.

COMMISSIONER WATTS: And do you —well, I would suggest if you haven't seen a lawyer that we go ahead and read this petition through so that you know what you are charged with and that we explain to you what your legal rights in this matter are and what the possible consequences can be and then you can make your decision about whether or not to see a lawyer. If you want to see one but are unable to afford one, Mrs. C., the court can appoint an attorney for him if your income is below a certain level so first of all the district attorney will read this petition and then we'll go into the explanations . . .

COMMISSIONER WATTS: Do you want to see a lawyer before we go any further?

MRS. C.: I really don't know what to say or do about it. What do you want to do? You want to admit to it or what?

CHILD: (No response audible.)

MRS. C.: Whatever. I'm just asking you because I don't know too much about it. I'm just . . .

COMMISSIONER WATTS: What would be your choice in this matter, J.C.? Do you want to see a lawyer or do you want to go ahead and admit to it or what?

CHILD: I'll admit to it.

COMMISSIONER WATTS: You'll admit to it. Do you understand what you are admitting to?

The commissioner then proceeded to comply with C.R.J.P. 3(c) and explained the elements of the crimes to which J.F.C. was admitting. Recognizing the confusing nature of the act of conspiracy, the commissioner engaged in a lengthy discussion explaining the elements of that crime in which J.F.C. and his mother actively participated. The commissioner then explained the sentencing alternatives, and the factual basis for the allegations in the petition was determined by having J.F.C. explain what happened in his own words. *See ALI–ABA, Law & Tactics in Juvenile Cases* § 12.5 (3rd ed. 1977).

■ In determining whether there has been a valid waiver of rights, the factual circumstances of each case must be examined, that is, the totality of circumstances test is applied. *People v. Thorpe*, 641 P.2d 935 (Colo.1982). Facts to be considered are the age and intelligence of the child and his prior experience with the juvenile justice system.

■ The record here provides us with sufficient information to conclude that the court did not abuse its discretion in denying J.F.C.'s motion to withdraw his plea of admission to the petition. We note the defendant here was 16 at the time he admitted guilt to the charges and he conceded that he had had previous contacts with the juvenile court in delinquency proceedings. In addition, the record does not indicate, nor does the juvenile contend in his appeal, that he had a meritorious defense to the charge, which is a prerequisite to a withdrawal of guilty plea. *People v. Lucero*, 164 Colo. 247, 434 P.2d 128 (1967). *See also People v. Cushon*, 650 P.2d 527 (Colo.1982).

We have considered the People's contention that we lack jurisdiction of the subject matter of this appeal because a motion for rehearing was not timely filed and find it to be without merit.

Judgment affirmed.

STERNBERG, J., concurs.

PIERCE, J., dissents.

PIERCE, Judge, dissents.

It would appear to me that the General Assembly would not have required a parent to be present, even in an advisory capacity at the time alternatives to a child's plea and other constitutional rights are being discussed, if that requirement were not of great significance.

Where the record reveals, as this one does, that the parent is totally confused and is unable to advise freely, or is totally confused and unable to support or guide the child because the parent has no understanding of the matters being explained, then the parent is incapable of fulfilling the role contemplated by the General Assembly,

and this fact alone should be determinative of the issue. *See People in the Interest of L.B., supra.*

If the understanding of the parent is not a significant factor, then the General Assembly's requirement is a futility.

I would reverse the judgment.