The **PEOPLE** of the State of Colorado, Plaintiff–Appellant and Cross–Appellee,

v.

Vincent M. **RODRIGUEZ,** Defendant–Appellee and Cross–Appellant.

Nos. 92CA1741, 92CA1743.

Colorado Court of Appeals, Div. III.

April 7, 1994.

Rehearing Denied June 2, 1994.

Certiorari Denied Feb. 13, 1995.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Henry R. Reeve, Sp. Asst. Atty. Gen., Denver, for plaintiff-appellant and cross-appellee.

Lozow & Lozow, P.C., Bradley A. Lozow, Denver, for defendant-appellee and cross-appellant.

Opinion by Judge DAVIDSON.

The People appeal from the trial court's order vacating the judgments of conviction entered upon jury verdicts finding defendant, Vincent M. Rodriguez, guilty of one count of first degree murder by extreme indifference, two counts of attempted first degree murder by extreme indifference, and two counts of first degree assault by extreme indifference. Defendant cross-appeals from the judgments of conviction entered upon jury verdicts finding him guilty of one count of second degree murder, two counts of attempted second de-

gree murder, and two counts of first degree assault with a deadly weapon. We affirm in part, reverse in part, and remand with instructions.

Defendant was a passenger in a sport utility vehicle, a Suzuki, which, while in route from a party in Commerce City to Denver, was driven past a party where a large crowd was milling about in the street. A number of party guests, many of whom were members of, or affiliated with, a gang known as the "Inca Boys," began to follow the Suzuki down the street. Defendant pointed a loaded revolver out of the passenger window and fired in the direction of the crowd.

Three of the party guests were struck by gunfire. One sustained injury to his thigh, another suffered injuries to his stomach and intestines, and the third died from injuries to his lungs and spinal cord.

After leaving the scene of the shooting, the driver returned to the party in Commerce City and left defendant there. The driver, joined by a friend, T.R., who had also attended the Commerce City party, then drove to T.R.'s apartment.

Police were able to obtain a description of the Suzuki from witnesses, including the distinctive insignia on the front and rear windshields. They were also able to obtain the name of T.R., who had been observed riding in the Suzuki earlier in the day. Upon arrival at T.R.'s address, police officers found the driver and T.R. at the apartment. After obtaining consent to search the residence and the Suzuki, police discovered a .22 caliber revolver and two boxes of ammunition in the residence and an unspent .22 caliber shell on the floor of the Suzuki.

Police detectives took videotaped statements from the driver and from T.R. The gun was taken and test fired at a police laboratory and the bullets compared with the one removed from the deceased victim's body. Although the bullets shared some essential characteristics, the bullet which killed the victim was damaged too severely to allow for a positive match. The bullets which injured the other two victims were lodged within their bodies and could not be removed safely.

The driver testified at trial that he had never seen the gun before. He further testified that, after bringing defendant back to the party in Commerce City, several persons whom he believed to be defendant's brothers instructed him to take the gun and dispose of it.

The surviving victims and other party guests testified that defendant was "throwing up gang signs" as the Suzuki passed the crowd and that, although they could not identify the shooter, several rounds were fired by a passenger in the Suzuki. Several party guests indicated they had seen another individual with a gun earlier, but none of them indicated that any other shots had been fired.

Defendant asserted at trial that the victims may have been struck by bullets from a gun fired by someone other than himself. He presented evidence from a witness who stated she had seen someone, not defendant, firing a gun out of a moving vehicle which did not match the description of the Suzuki. Another of defendant's witnesses testified that he had heard two shots from another direction several minutes before hearing the shots that came from the Suzuki.

Alternatively, defendant alleged that he acted in self-defense. He stated that he had fired the revolver into the air above the crowd because he was afraid that the hostile party guests, who might have mistakenly thought he was throwing "gang signs," would catch up to the car and attack him. He stated that he had heard a gunshot and therefore believed the crowd was armed. He testified that the driver took the gun from under the dashboard, gave it to him, and he then placed his head between his knees and fired the gun, which he believed to be pointed up into the air, in order to scare the crowd.

The jury returned verdicts of guilty of one count of first degree murder by extreme indifference and two counts of attempted first degree murder by extreme indifference. The jury also found defendant guilty of two counts of first degree assault by use of a deadly weapon and two counts of first degree assault by extreme indifference. The jury acquitted defendant of one count of first de-

gree murder after deliberation and two counts of attempted first degree murder after deliberation, but returned verdicts of guilty on the lesser included offenses of second degree murder and attempted second degree murder.

The trial court concluded that dual murder and attempted murder convictions as to each of the three victims were impermissible and consequently vacated all extreme indifference verdicts. The trial court then merged the verdicts on first degree assault extreme indifference into the verdicts on first degree assault by use of a deadly weapon and sentenced defendant to 60 years in the Department of Corrections.

## I.

On appeal, the People contend that the trial court erroneously vacated the extreme indifference convictions. On cross-appeal, defendant's primary argument is that the verdicts returned were inconsistent. The issues are interrelated, so we will address them together. We agree with the People on both.

## A.

Defendant was charged with murder and attempted murder on theories of deliberation and extreme indifference. He was charged with first degree assault on theories of use of a deadly weapon and extreme indifference. The jury instructions and the verdict forms gave the jury the option, as to all counts, of a guilty verdict for any lesser included offenses.

Thus, the jury was instructed that, if it did not find that first degree murder after deliberation had been proven, it could find defendant guilty of the lesser included offense of second degree murder. It was similarly instructed that, if it did not find that first degree murder by extreme indifference had been proven, it could find defendant guilty of the lesser included offense of second degree murder. The jury was similarly instructed as to the attempted murder counts.

On the first degree murder by extreme indifference and attempted first degree murder by extreme indifference charges, the jury returned verdicts of guilty. On the first degree murder after deliberation and attempted first degree murder after deliberation charges, the jury returned verdicts of not guilty, but found defendant guilty of the lesser included offenses of second degree murder and attempted second degree murder.

## 1.

Defendant's primary contention is that the jury was allowed to deliberate upon two inconsistent theories of first degree murder and attempted first degree murder. Specifically, he contends that the jury could not properly convict on the basis of one theory, extreme indifference, and also convict of a lesser included offense derived from the other theory, after deliberation. We disagree. Defendant misconstrues the relationship between second degree murder and first degree murder by extreme indifference.

■■■ Generally, the crimes of second degree murder and attempted second degree murder are, respectively, lesser included offenses of first degree murder or attempted first degree murder under any theory. *See* §§ 18–1–408(5)(a) and 18–1–408(5)(c), C.R.S. (1986 Repl.Vol. 8B); *see e.g. People v. Thomas*, 729 P.2d 972 (Colo.1986); *Crespin v. People*, 721 P.2d 688 (Colo.1986). And, contrary to defendant's contention, we specifically conclude that second degree murder is a lesser included offense of first degree murder by extreme indifference.

■■■ Both first degree murder by extreme indifference and second degree murder are committed "knowingly" and are thus general intent crimes. In *People v. Marcy*, 628 P.2d 69 (Colo.1981), our supreme court determined that first degree murder by extreme indifference and second degree murder were indistinguishable because both required an act performed knowingly resulting in death and because the additional element required for first degree murder, that this act be performed under circumstances manifesting extreme indifference to the value of human life, added nothing to the proscribed conduct to differentiate it from second degree murder.

In response, the General Assembly amended the statute to define first degree murder by extreme indifference as a knowing killing committed under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally. *See* Colo.Sess.Laws 1981, ch. 212, § 18–3–102(1)(d) at 973. Our supreme court has held that this change assured that the proscribed conduct is sufficiently distinguishable from that constituting second degree murder. *See People v. Jefferson,* 748 P.2d 1223 (Colo.1988).

■ A lesser included offense is one which is established by proof of the same or less than all the facts required to establish the offense charged. Section 18–1–408(5)(a), C.R.S. (1986 Repl.Vol. 8B). "In order to determine whether one offense is included in another, we compare the elements of the statutes involved and not the evidence shown at trial." *Armintrout v. People,* 864 P.2d 576, 579 (Colo.1993).

First degree murder by extreme indifference contains an element in addition to those required for second degree murder; this additional element requires proof that the defendant's conduct manifested extreme indifference to the value of human life generally and that the circumstances evidence an attitude of universal malice. *People v. Jefferson, supra.* Thus, second degree murder is a lesser included offense of that crime.

■ The fact that defendant was charged with first degree murder and attempted first degree murder on two theories does not change the analysis. Although a finding of specific intent to kill a particular victim precludes a simultaneous finding of extreme indifference to the value of human life generally, *see People v. Atkins,* 844 P.2d 1196 (Colo. App.1992), it is permissible nonetheless for the People to charge on two different theories of first degree murder. After the close of all evidence, the People may, but are not required to, elect between the theories charged. *People v. Freeman,* 668 P.2d 1371 (Colo.1983); *People v. Lowe,* 660 P.2d 1261 (Colo.1983).

We note that the jury was not instructed here that it could return a verdict of guilty on only one of the alternative theories. However, in fact, the jury did not find defendant guilty of two irreconcilable theories of first degree murder. To the contrary, the jury returned guilty verdicts on the theory of first degree murder and attempted first degree murder by extreme indifference and on the lesser included offenses—under either theory of first degree murder—of second degree murder and attempted second degree murder.

■ If a jury, as here, either because of inappropriate instructions or because it did not follow the instructions given, returns a verdict on both greater and lesser included offenses, the remedy is not, as defendant asserts, to grant a new trial. Instead the remedy is to merge the lesser offense, here second degree murder, into the greater. *See People v. Hickam,* 684 P.2d 228 (Colo.1984); *People v. Hancock,* 186 Colo. 30, 525 P.2d 435 (1974).

2.

■ For the same reason, defendant's perception that the dual convictions are logically inconsistent is based upon the erroneous premise that a finding of guilt on second degree murder, as a lesser included offense to a charge of first degree murder after deliberation, is incompatible with a finding of guilt on a charge of first degree murder by extreme indifference. Conversely, because second degree murder also is a lesser included offense of first degree murder by extreme indifference, the jury here could have determined that defendant knowingly caused the death of another person and also possessed universal malice manifesting extreme indifference towards the value of human life generally. *See People v. Jefferson, supra;* §§ 18–3–102(1)(d) and 18–3–103(1)(a), C.R.S. (1986 Repl.Vol. 8B). *Cf. People v. Atkins, supra.*

3.

■ Similarly, we do not accept defendant's contention that the verdicts are legally inconsistent. Legally inconsistent verdicts requiring reversal result from the irreconcilable rejection by the jury of evidence it relied upon to convict on one charge, in order

to acquit on another charge. *Robles v. People*, 160 Colo. 297, 417 P.2d 232 (1966) (because jury which returned a guilty verdict on conspiracy to commit robbery charge rejected the only evidence presented which could have supported such a charge when it acquitted the defendant of robbery, the verdicts were inconsistent and could not stand); *People v. Castenada*, 765 P.2d 641 (Colo.App. 1988) (because jury had to accept the prosecution's evidence as to the possession and use of a deadly weapon in order to convict on the aggravated robbery count and reject that same evidence in order to acquit on the crime of violence count, the verdicts were inconsistent and could not stand).

There was no such simultaneous acceptance and rejection by the jury of evidence relied upon for these convictions. As pertinent here, the jury's determination that defendant did not act with deliberation does not require rejection of evidence that he acted knowingly and with universal malice.

### B.

The trial court ruled that, because the jury returned verdicts of guilty on both extreme indifference murder and second degree murder and attempted murder, it was required under the rule of lenity to vacate one of the murder convictions and one of the attempted murder convictions as to each individual victim. The People argue, however, that the trial court misapplied the rule of lenity and vacated the wrong ones. We agree.

Just as a defendant may not be convicted on two alternative theories of murder of a single victim, a defendant may not be convicted of both first and second degree murder of a single victim. *People v. Hickam, supra.* Thus, the trial court was correct in concluding that the dual convictions for murder and for attempted murder could not stand. The trial court, however, erroneously vacated the extreme indifference convictions.

The rule of lenity is a rule of statutory construction which requires that any ambiguities in criminal statutes be strictly construed in favor of the accused. *See Faulkner v. District Court*, 826 P.2d 1277 (Colo.1992). As applied to dual convictions for murder of

a single victim, the rule of lenity has been invoked by our supreme court in determining that the General Assembly did not intend two murder convictions for a single death. *See People v. Lowe, supra.* It is merely a rule of statutory construction, however; the rule of lenity does not operate substantively to require a trial court to vacate the conviction of the greatest degree.

Because we have determined that the jury convicted defendant of both greater and lesser included offenses, the proper course of action was not to vacate the more serious offenses as the trial court did here, but instead, to vacate the lesser offenses. *See Boulies v. People*, 770 P.2d 1274 (Colo.1989) (merger rule provides that conviction of a lesser included offense merges into the conviction of the greater inclusive offense); *People v. Hancock, supra; People v. Bugarin*, 181 Colo. 62, 507 P.2d 875 (1973). Therefore, we must remand the cause to the trial court to vacate the convictions of second degree murder and attempted second degree murder and to reinstate the verdicts of guilty on the extreme indifference murder and attempted extreme indifference murder charges. *See People v. Hickam, supra.*

### II.

Defendant also contends that the evidence presented at trial was so inconsistent that it was insufficient to support his convictions on all charges. We disagree.

It was undisputed that defendant fired three shots out of the window of the Suzuki. Defendant offered testimony indicating that other gunfire took place at the party. On appeal, while seeming to concede that the evidence was in conflict, defendant appears to argue that the evidence was insufficient to support a conclusion beyond a reasonable doubt that the shots fired by him were the cause of the injuries to the victims. In particular, he argues that it was improbable that the shots he fired struck the victims because the gun was pointed in the air above the crowd.

When considering a claim of insufficient evidence to support a conviction, the reviewing court must determine whether the

evidence, viewed in the light most favorable to the prosecution, is substantial and sufficient to allow a reasonable person to conclude the defendant is guilty beyond a reasonable doubt. *Kogan v. People,* 756 P.2d 945 (Colo.1988); *Taylor v. People,* 723 P.2d 131 (Colo.1986).

The element of universal malice required for extreme indifference murder has been defined as aggravated or extremely reckless conduct. *People v. Jefferson, supra.* Defendant's own testimony was that, in a knowing effort to scare the crowd, he fired these shots with his right hand, although he is left-handed, while his head was placed between his knees.

"[T]he discharge of a firearm into a crowd of people," is one of the frequently used examples of behavior which manifests extreme indifference to the value of human life generally. *See People v. Jefferson, supra.* Firing a round as a "warning shot" in order to scare someone and hitting him inadvertently is another example. *See People v. Fernandez,* 883 P.2d 491 (Colo.App.1994); *see also Myrick v. State,* 199 Ga. 244, 34 S.E.2d 36 (1945) (intending to scare a person by firing over his head and hitting him by mistake demonstrated a reckless disregard for human life which could be treated by the jury as the equivalent of a specific intent to kill).

Any conflict in the evidence whether there were other shots fired at the party or whether those shots, and not the ones fired by defendant, caused the death and injuries was for the jury to resolve. *See People v. Swanson,* 638 P.2d 45 (Colo.1981); *People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973). Therefore, taking the evidence in the light most favorable to the prosecution, as we must, it is plainly sufficient to support a conviction on the extreme indifference charges.

## III.

Defendant also contends that he is entitled to a new trial because of various erroneous evidentiary rulings. We perceive no reversible error.

## A.

During trial, defendant attempted to elicit testimony on cross-examination of the party guests as to the presence of weapons at other "Inca Boy" parties, and the general propensity of the "Inca Boys" to fight any rival gang members who strayed into their territory. The trial court disallowed such questioning. Defendant argues that this evidence was crucial to his claim that he acted in self-defense. We disagree.

The jury convicted defendant of first degree extreme indifference murder and attempted first degree extreme indifference murder. However, the affirmative defense of self-defense is not consistent with such charges. Thus, as it relates to those charges, any evidence reflective of an apprehension of imminent danger is immaterial. *See People v. Fernandez, supra.*

To the extent that the claim of self-defense was applicable to the other charges, however, we simply note that defendant's own testimony was that, although he saw no guns or weapons as he was driving past the party, the crowd was "hostile" because he had seen the party guests surround and strike another vehicle. He testified that this perception was heightened when the crowd chased after the Suzuki and when he heard what he believed to be a gunshot. However, defendant also stated that he was not a gang member, that he was unfamiliar with the area of Denver in which the party took place, and that he wasn't concerned that it might be "Inca Boy" territory.

The touchstone of self-defense is whether, from the standpoint of the defendant, his belief that danger was imminent is reasonable. *See People v. Fuller,* 781 P.2d 647 (Colo.1989). Even if an "Inca Boy" penchant for guns and violence was arguably relevant to a self-defense claim, by his own admission, defendant was not aware of it. *See* CRE 404(2). The evidence did not indicate that defendant knew of this reputation, or that he was aware that the party guests were "Inca Boys," or that he knew that he was in "Inca Boy" territory.

Thus, the information defendant hoped to elicit was not relevant. *See People v. Ibarra,* 849 P.2d 33 (Colo.1993); *People v. Smith,* 848 P.2d 365 (Colo.1993). The trial court may limit cross-examination to exclude irrelevant and immaterial matters; therefore, we perceive no error in so limiting the cross-examination here. *People v. Raffaelli,* 647 P.2d 230 (Colo.1982).

### B.

Defendant contends that the trial court erred by allowing into evidence the revolver recovered by the police. We disagree.

Defendant argues that because of the conflicting testimony concerning the origin of the gun, and because no witness could positively say that it was the gun used in the shooting, it should not have been admitted. Defendant further argues that, because the gun was inadmissible, any testimony concerning testing of the gun was also inadmissible.

All witnesses, including defendant, who had a clear view of the gun used in the shooting testified that the one recovered by police looked like the one used. There was no break in the chain of custody after the police obtained possession of the gun. Test bullets fired from the gun were consistent with the bullet recovered from the deceased victim, although no conclusive identification was possible.

The lack of a positive identification of the gun affects the weight to be given the evidence, not the admissibility. *See Mitchell v. People,* 173 Colo. 217, 476 P.2d 1000 (1970); *Reynolds v. People,* 172 Colo. 137, 471 P.2d 417 (1970). Therefore, we conclude that the trial court did not err by admitting the gun and the evidence concerning the firing of test ammunition.

### C.

Defendant argues that the trial court erred by allowing into evidence inadmissible hearsay by an unknown declarant. Again we disagree.

At trial, the driver testified that a person he believed to be defendant's brother told him in a threatening manner to, in effect, get rid of the gun or else he would not be leaving the party. This evidence was offered to explain why the driver ended up taking the gun with him when he left the Commerce City party for the last time. Whether the declarant was being truthful in making these threatening statements is not at issue.

The People contend, and we agree, that these out-of-court statements are not hearsay because they were not offered for the truth of the matter asserted. *See People v. Huckleberry,* 768 P.2d 1235 (Colo.1989).

### D.

Defendant also contends that the trial court erred by admitting out-of-court statements made by him to T.R. during the trial without allowing him a continuance to investigate those statements. We disagree.

During the pendency of the trial, T.R. was in custody on another matter. T.R. testified that, while confined briefly in the same holding cell as defendant, defendant made a statement indicating that he thought he would escape conviction because the deceased victim had been killed by a .25 caliber bullet while the gun he used was a .22 caliber.

The prosecution disclosed this information to defendant, and, upon request, the court granted a recess during which defense counsel investigated the incident. Defendant then requested, alternatively, a continuance or a mistrial due to insufficient time to investigate. He claimed that the disclosure of the information was untimely under Crim.P. 16. The trial court did not agree that this was a discovery violation and denied the request.

The decision to deny a request for a continuance is within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. *People v. Mann,* 646 P.2d 352 (Colo.1982). A defendant must demonstrate actual prejudice arising from the denial of the continuance before it will be overturned as an abuse of discretion. *People v. Denton,* 757 P.2d 637 (Colo.App.1988). Similarly, the denial of a

motion for mistrial will not be disturbed on appeal absent an abuse of discretion. *See People v. Austin,* 799 P.2d 408 (Colo.App. 1990).

Here, defendant has not demonstrated how he was prejudiced by not receiving a continuance. Defense counsel was afforded a recess during which T.R. was interviewed, and T.R. was subject to cross-examination concerning the statement and the circumstances under which it was made. Defendant indicates that he was unable during the recess to contact several parties who may have overheard the statement, but has not indicated in what manner further investigation of the circumstances surrounding this statement could have affected his ability to present his defense. Defendant never denied that he was the one who fired the shots from the Suzuki. Therefore, we perceive no abuse of discretion in denying the continuance or the motion for mistrial. *People v. Hampton,* 758 P.2d 1344 (Colo.1988); *People v. Austin, supra.*

### E.

Defendant also argues that the trial court committed reversible error in allowing the prosecution to play for the jury the videotaped statements of the driver and of T.R. We disagree.

■ The prosecution offered the videotaped statements as prior consistent statements pursuant to CRE 801(d)(1)(B) after defendant impeached the witnesses during cross-examination. Defendant objected on the grounds that the videotaped statements were cumulative and not subject to cross-examination.

During cross-examination, defendant made a general attack upon the credibility of the witnesses, implying recent fabrication. Therefore, the trial court was correct in concluding that the entire videotaped statements were admissible as non-hearsay prior consistent statements. *See People v. Tyler,* 745 P.2d 257 (Colo.App.1987).

■ To the extent that the evidence was cumulative, that by itself does not render it inadmissible. *See Lira v. People,* 166 Colo. 498, 445 P.2d 62 (1968); CRE 403. Admission of cumulative evidence is an abuse of discretion only if manifestly arbitrary, unreasonable, or unfair under the circumstances. *People v. Baca,* 852 P.2d 1302 (Colo.App. 1992).

Here, the prosecution was entitled to use prior consistent statements of the witnesses to rebut a general attack upon their credibility. These prior consistent statements were preserved in the form of videotaped statements to a police detective. Under these circumstances, we perceive no abuse of discretion. *See People v. Taylor,* 804 P.2d 196 (Colo.App.1990).

■ Although videotaped testimony is not subject to cross-examination, and may have a greater impact than other forms of preserved prior consistent statement, a jury may nonetheless be allowed to view such videotapes. *See People v. Montoya,* 773 P.2d 623 (Colo.App.1989). To the extent that defendant contends that the use of the videotapes here allowed undue emphasis to be placed upon the testimony, we note that he raises this assertion for the first time in his reply brief, and therefore, that issue is not properly before this court. *See People v. Czemerynski,* 786 P.2d 1100 (Colo.1990).

### IV.

■ Defendant's final contention is that the trial court erred by denying his motion for acquittal on one count of first degree assault on the grounds that the evidence at trial failed to show that serious bodily injury had been sustained by the victim. We disagree.

Serious bodily injury is defined by § 18–1–901(3)(p), C.R.S. (1993 Cum.Supp.) as:

[b]odily injury which, either at the time of the actual injury or at a later time, involves a substantial risk of death, a substantial risk of serious permanent disfigurement, a substantial risk of protracted loss or impairment of the function of any part or organ of the body, or breaks, fractures, or burns of the second or third degree.

Here, the physician who treated the victim testified that he had been placed at a substantial risk of protracted loss or impairment

of the function of his leg by the bullet wound to his thigh and had suffered a non-dislocated fracture of a portion of his femur. The fact that the victim healed well and made a good recovery is not relevant to the determination that he suffered a serious bodily injury. *See People v. Thompson,* 748 P.2d 793 (Colo.1988) (serious bodily injury must be determined by considering the victim's condition at the time of injury, not at the time of trial).

The order vacating the judgments of conviction for first degree murder and attempted first degree murder is reversed and the cause is remanded to the trial court with instructions to reinstate those convictions, to vacate the judgments of conviction for second degree murder and attempted second degree murder, and to re-sentence accordingly. The judgments are affirmed in all other respects.

CRISWELL and TAUBMAN, JJ., concur.