**The PEOPLE of the State of Colorado,
Plaintiff–Appellant,**

v.

**S.M.D., Defendant–Appellee.**

**No. 93SA153.**

Supreme Court of Colorado,
En Banc.

Jan. 10, 1994.

Robert S. Grant, Dist. Atty., Seventeenth Judicial Dist., Michael J. Milne, Sr. Deputy Dist. Atty., Brighton, for plaintiff-appellant.

Charles F. Kaiser and Vitek and Doniger, P.C., Jeffrey D. Doniger, Denver, for defendant-appellee.

Justice VOLLACK delivered the Opinion of the Court.

In this interlocutory appeal under C.A.R. 4.1,[1] the prosecution seeks reversal of an order of the Adams County District Court, granting the motion of S.M.D., a juvenile defendant, to suppress a statement he made to the investigating officers during a custodial interrogation. S.M.D. was taken into custody in connection with a murder. Several officers of the Thornton Police Department interrogated S.M.D. in the presence of B.B., who had been appointed as his guardian ad litem in a juvenile dependency and neglect proceeding, unrelated to the present action. Holding that the custodial interrogation had not complied with section 19–2–210, 8B C.R.S. (1993 Supp.),[2] since the guardian ad litem was neither his guardian nor counsel representing the defendant, the district court suppressed the juvenile's custodial statement. Because we find that, during the custodial interrogation, the guardian ad litem was acting in the representative capacity contemplated by the statute, we reverse the ruling of the district court.

I.

In October 1990, a dependency and neglect action, Case No. 90JN378, was filed in which the Adams County Department of Social Services received legal and physical custody of S.M.D. B.B., an attorney, was appointed as S.M.D.'s guardian ad litem (hereinafter referred to as B.B. or the GAL). B.B. appeared with S.M.D. on several occasions in that case, and had established a rapport with him.

On Sunday, October 25, 1992, the police department received a report of a murder in Thornton. The police officers arrested S.M.D. and took him into custody later that day. The police, before interrogating him, contacted his legal guardian, the Adams County Department of Social Services, because the defendant was a juvenile.

At 7:50 p.m. on Sunday evening, a Department of Social Services emergency caseworker telephoned B.B., the attorney who had been appointed guardian ad litem in the dependency and neglect action. The caseworker informed B.B. that S.M.D. had been arrested for his involvement in a serious shooting incident and asked B.B. to go to the Thornton Police Department. B.B. complied with the Department of Social Services' request to go down to the police station.

Prior to the custodial questioning, B.B. requested and was given the opportunity to consult privately with S.M.D. The consultation lasted forty-five minutes. After the consultation, B.B. requested that the police administer a blood alcohol test to the defendant and that S.M.D. be provided with food before the questioning. S.M.D. and B.B. signed the Juvenile Advisement and Statement form indicating that they understood the rights enumerated on the form, and signed a *Miranda* waiver indicating that S.M.D. was willing to answer the police officer's questions concerning the investi-

---

**1.** Rule 4.1 permits the prosecution to enter an interlocutory appeal to the supreme court to review a trial court's ruling made upon a suppression motion.

**2.** The statute, by its plain language, seeks to exclude a juvenile's statements or admissions made as a result of a custodial interrogation without the presence of a "parent, guardian, or legal or physical custodian of the juvenile."

gation with the GAL present. They also signed a consent for a blood alcohol test.

Thereafter, an officer questioned S.M.D. about the murder in the presence of the GAL. During the interview, the juvenile made an inculpatory statement.

S.M.D., aged fourteen years at the time of the incident, was then charged as an adult with first degree murder in the Adams County District Court. S.M.D. moved to suppress the custodial statement, which, he argued, was obtained in violation of section 19–2–210(1), 8B C.R.S. (1993 Supp.), because the guardian ad litem who accompanied him was not a parent, guardian, legal or physical custodian, or other adult assuming the role of parent or attorney representing him, as the statute required.

A two-day evidentiary hearing was held on the motion. B.B. testified that he believed he was acting in his GAL capacity when he went to the Thornton Police Department. B.B. further stated that he knew that S.M.D. was estranged from his natural mother, that his father and stepmother lived out of state, and that S.M.D. was in social service placement. B.B. also testified that on the day after the custodial interrogation, when the new case file was opened, the court appointed him as guardian ad litem in this case.[3]

The district court suppressed S.M.D.'s custodial statement, holding that the custodial interrogation had not complied with section 19–2–210(1), 8B C.R.S. (1993 Supp.), and that S.M.D.'s *Miranda* waiver was therefore invalid. The district court first evaluated whether a guardian ad litem can be classified as a parent, guardian, or legal or physical custodian of the child under section 19–2–210. The district court concluded that, under the statute, B.B., acting as S.M.D.'s guardian ad litem, did not constitute counsel representing the defendant but would constitute a guardian provided that the court had appointed him as guardian ad litem to protect the best interests of the child in this case. The court determined that the term "guardian," as used in the statute, incorporates and includes a "guardian ad litem." The court, however, noted that a guardian ad litem is appointed for a specific purpose or in a specific proceeding. The court then determined that B.B. was specifically appointed as guardian ad litem in the dependency and neglect action, but not designated to represent the child's interests in this juvenile proceeding. The court reasoned that the GAL would have been a guardian under the terms of the statute if he had been appointed to protect the defendant's interests in this particular proceeding. Because, however, B.B. had not been designated to represent the defendant in this proceeding at the time of the custodial interrogation, he had exceeded the authority of his appointment in the dependency and neglect action. The district court concluded that he therefore did not fall within the category of individuals enumerated in the statute. We reverse the order granting the motion to suppress.

## II.

The defendant contends that the GAL did not qualify as a consulting adult under section 19–2–210(1), 8B C.R.S. (1993 Supp.), of the Children's Code.[4] Defendant fur-

---

**3.** B.B. filed motions to withdraw himself from both proceedings, recognizing a potential conflict in representing S.M.D.'s best interests, in both the dependency and neglect action and this proceeding, and the fact that he may be called as a witness in this matter. The motions were granted on November 30, 1992, and December 1, 1992.

**4.** The Children's Code defines a "guardianship of the person" and a "guardian ad litem" as follows:

"Guardianship of the person" means the duty and authority vested by court action to make major decisions affecting a child, including, but not limited to:

. . . .

(b) The authority to represent a child in legal actions and to make other decisions of substantial legal significance concerning the child[.]

§ 19–1–103(15), 8B C.R.S. (1993 Supp.).

"Guardian ad litem" means a person who is appointed by a court to act in the best interests of a person whom he is representing in proceedings under this title and who, if appointed to represent a person in a dependency and neglect proceeding under article 3 of this

ther maintains that, because a guardian ad litem is not one of the persons contemplated under the statute, the juvenile's statement obtained during the custodial interrogation was not admissible.

The issue to be addressed at this time is whether section 19–2–210(1), 8B C.R.S. (1993 Supp.), was complied with when S.M.D.'s statement was obtained in the presence of the GAL, but in the absence of one of the persons specifically designated by the statute.

Section 19–2–210(1), 8B C.R.S. (1993 Supp.), of the Children's Code states in pertinent part:

> No statements or admissions of a juvenile made as a result of the custodial interrogation of such juvenile by a law enforcement official concerning delinquent acts alleged to have been committed by the juvenile shall be admissible in evidence against such juvenile unless a parent, guardian, or legal or physical custodian of the juvenile was present at such interrogation and the juvenile and his parent, guardian, or legal or physical custodian were advised of the juvenile's right to remain silent and that any statements made may be used against him in a court of law, of his right to the presence of an attorney during such interrogation, and of his right to have counsel appointed if he so requests at the time of the interrogation; except that, if a public defender or counsel representing the juvenile is present at such interrogation, such statements or admissions may be admissible in evidence even though the juvenile's parent, guardian, or legal or physical custodian was not present.[5]

In interpreting a statute, our primary task is to construe the statute consistently with the legislative intent. *Meyers v. Price*, 842 P.2d 229 (Colo.1992); *Jones v. Martinez*, 799 P.2d 385 (Colo.1990); *People v. Davis*, 794 P.2d 159 (Colo.1990), *cert. denied*, 498 U.S. 1018, 111 S.Ct. 662, 112 L.Ed.2d 656 (1991). This court has previously found that the purpose in enacting the statute is to ensure that a juvenile during police interrogation is advised and counseled concerning his or her Fifth Amendment right against self-incrimination and Sixth Amendment right to counsel by someone whose interests are consistent with those of the child.[6] *People in the Interest of J.C.*, 844 P.2d 1185 (Colo.1993); *People in the Interest of G.L.*, 631 P.2d 1118 (Colo.1981); *People v. Maes*, 194 Colo. 235, 571 P.2d 305 (1977); *People v. Raibon*, 843 P.2d 46 (Colo.App.1992); *People in the Interest of R.L.N.*, 43 Colo.App. 542, 605 P.2d 491 (1980). We believe that the statutory construction originally given by the court of appeals in *People in the Interest of L.B.*, 33 Colo.App. 1, 513 P.2d 1069 (1973), and approved by this court in *People v. McAnally*, 192 Colo. 12, 554 P.2d 1100 (1976),[7] appropriately describes the type of relationship which our legislature, in adopting this language, thought worthy of consideration.

The testimony of the GAL demonstrates that he was acting in the capacity contemplated by the statute. B.B., an attorney, had been appointed in October 1990 as S.M.D.'s guardian ad litem in a dependency and neglect action, had appeared with S.M.D. in court on several occasions, and had established a rapport with him.

---

title, shall be an attorney-at-law licensed to practice in Colorado.
§ 19–1–103(14), 8B C.R.S. (1993 Supp.).

**5.** The Colorado Children's Code, Title 19 of the Colorado Revised Statutes, was revised and re-enacted in its entirety in 1987. Act approved July 10, 1987, ch. 138, sec. 1, 1987 Colo.Sess. Laws 695. Section 19–2–210 is substantially similar to § 19–2–102(3)(c)(I) as it existed prior to 1987.

**6.** The legislative purpose in enacting § 19–2–102(3)(c)(I), 8B C.R.S. (1986) (repealed 1987), the predecessor to the current version, § 19–2–

210(1), 8B C.R.S. (1993 Supp.), applies equally as well to the present statute since the language of both statutes is substantially similar.

**7.** Specifically, *McAnally* stated that

> [i]t is implicit that a child involved in the commission of an offense should be afforded protective counseling concerning his legal rights from one whose interests are not adverse to those of the child, to the end that any statements made by the child be given voluntarily, knowingly, and intelligently.

*McAnally*, 192 Colo. at 15, 554 P.2d at 1102–03.

B.B. testified that he believed he was acting in that capacity when he assisted S.M.D. before and during the custodial interrogation. B.B. further stated that he knew that S.M.D. was estranged from his natural mother, that his father and stepmother lived out of state, and that S.M.D. was in the legal custody of the Department of Social Services.

For the purposes of the statute, the Department of Social Services was S.M.D.'s legal custodian, the "person legally responsible for his care." In complying with the Department of Social Services' request to go down to the police station, B.B. was acting in a representative capacity on behalf of the Department of Social Services in representing and protecting the welfare and best interests of S.M.D.

We distinguish this case from *People v. Maes*, 194 Colo. 235, 571 P.2d 305 (1977), in which this court found that a county social service caseworker was not acting in the capacity of a parent, guardian, or legal custodian. In *Maes*, the caseworker's testimony established that he had not seen the defendant for eighteen months prior to the time he was called to the police station for the custodial interrogation, and the caseworker indicated that he had no special concern or interest in the juvenile. *Id.* at 237, 571 P.2d at 306. In contrast, B.B. received a call from the Department of Social Services on Sunday evening requesting his presence at S.M.D.'s custodial interrogation at the police station. B.B. willingly complied with its request. B.B.'s testimony and concerned actions taken before and during the custodial interrogation indicate that the GAL was acting "on the side" of the juvenile and did have S.M.D.'s best interests in mind throughout the questioning.

We find the facts of this case more closely approximate those in *People v. Cunningham*, 678 P.2d 1058 (Colo.App.1983). In *Cunningham*, the court of appeals concluded that a social worker for the Department of Social Services could and did properly act as legal custodian for the defendant at a delinquency advisement of rights proceeding. The court reasoned that the

interests of the social worker (the Department of Social Services), in acting as the child's custodian subsequent to the parental rights of his natural parents having been terminated, were not adverse to the child's interests in the juvenile delinquency proceeding. The court also noted that there are certain circumstances in which the additional appointment of a guardian ad litem might serve the child's best interests. *Id.* at 1060.

*Cunningham* suggests that the Department of Social Services, the legal custodian, was properly acting on S.M.D.'s behalf by requesting the GAL's presence at the custodial interrogation. As *Cunningham* also implies, in a case such as this one, the GAL appropriately served the function of advising the defendant, given B.B.'s familiarity with the legal proceedings as well as his knowledge of S.M.D.'s family background and criminal history. In his representative capacity as GAL, B.B. was in a position better than the defendant's parents (defendant was estranged from his natural mother, and his father and stepmother lived out of state) and the Department of Social Services, S.M.D.'s legal guardian, to advise, counsel, and protect the defendant's Fifth and Sixth Amendment rights during the custodial interrogation. He was ostensibly acting in a manner consistent with the defendant's best interests when he consulted with S.M.D. for forty-five minutes before the interview and when he remained with S.M.D. throughout the advisement and questioning.

In so concluding, we recognize that some states have developed an interested adult rule in which an adult interested in the juvenile's welfare, generally a parent, must be informed of the child's rights, have an opportunity to consult privately with the child, and be present during a custodial interrogation. *E.g., Commonwealth v. A Juvenile (NO. 1)*, 389 Mass. 128, 449 N.E.2d 654, 657 (1983); *In re E.T.C.*, 141 Vt. 375, 449 A.2d 937, 940 (1982); *State in the Interest of Dino*, 359 So.2d 586 (La.), *cert. denied*, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978); *Lewis v. State*, 259 Ind. 431, 288 N.E.2d 138, 142 (1972). We are

persuaded that the legislative purpose is best served by applying this statute to the particular facts present in this case. We find that, in complying with the Department of Social Services' request and acting on behalf of the Department, the GAL was representing and protecting the welfare and best interests of the accused juvenile at the custodial interrogation. Our conclusion complies with the legislative spirit of the law and is wholly consistent with our recognition of the statutory purpose.[8] To find otherwise would undermine the interests that the statute was designed to protect.

Our holding, today, does not expand the class of persons covered by this statute.

Rather, our holding is limited to the facts of this case.

We hold, therefore, that the district court erred in finding that the custodial statements should have been suppressed. Accordingly, the trial court's suppression order is reversed and the case is remanded for further proceedings consistent with this opinion.

SCOTT, J., does not participate.

---

8. Because we base our decision on these grounds, we need not address the other issues raised: (1) whether the GAL constituted "counsel representing the juvenile" for purposes of § 19–2–210(1), 8B C.R.S. (1993 Supp.); and (2) whether the GAL provided effective assistance to S.M.D.