Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2016 CO 71**

**No. 16SA2, <u>People in the Interest of A.L.-C.</u>—Colorado Children's Code—Admissibility of Confessions, Admissions, and Statements—Presence of Parent, Guardian, Custodian, or Attorney**

The supreme court addresses a statutory safeguard protecting a juvenile's right against self-incrimination. In particular, the court analyzes whether section 19-2-511(1), C.R.S. (2016), conditions the admissibility of a juvenile's statements to law enforcement on more than his parent's presence during his <u>Miranda</u> advisement and custodial interrogation. The supreme court concludes that the statute's plain language requires only that a parent be present for the juvenile's advisement and interrogation. Because, in this case, the juvenile's mother accompanied him for his advisement and interrogation, the trial court erred in suppressing his statements to law enforcement.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2016 CO 71

### Supreme Court Case No. 16SA2
*Interlocutory Appeal from the Juvenile Court*
Denver Juvenile Court Case No. 15JD155
Honorable Donna J. Schmalberger, Judge

### Petitioner–Appellant:

The People of the State of Colorado,

### In the Interest of

### Juvenile–Appellee:

A.L.-C.

### Order Reversed
*en banc*
October 24, 2016

**Attorneys for Petitioner–Appellant:**
Mitchell R. Morrissey, District Attorney, Second Judicial District
Robert J. Whitley, Chief Appellate Deputy District Attorney
  *Denver, Colorado*

**Attorneys for Juvenile–Appellee:**
Douglas K. Wilson, Public Defender
Ann M. Roan, Deputy Public Defender
  *Denver, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.

¶1 In this interlocutory appeal, we examine how the Colorado legislature has sought to safeguard a juvenile's constitutional right to avoid self-incrimination. Through section 19-2-511(1), C.R.S (2016), the General Assembly has determined a juvenile cannot validly waive that right unless accompanied by a parent, guardian, legal or physical custodian, or an attorney. Here, the trial court suppressed a juvenile's incriminating statements to police, concluding that although his mother was present, she could not protect his right to remain silent because she did not share his interests. The People sought our review under C.A.R. 4.1. Because the plain language of section 19-2-511(1) requires only that a parent be present during the advisement and interrogation—and here the juvenile's mother was present—we reverse the suppression order.

## I. Facts and Procedural History

¶2 On the evening of February 26, 2015, police received a report of a domestic disturbance involving then-sixteen-year-old A.L.-C. Officers arrived to find A.L.-C. feuding with his mother and stepfather on the first floor of the family home. Upstairs, A.L.-C.'s eleven-year-old sister, B.O., and a visiting aunt were also present. While police responded to the domestic disturbance, B.O. told the aunt that A.L.-C. had sexually assaulted her. Shortly thereafter, B.O. explained to her mother that in prior years, A.L.-C. had touched her inappropriately and had had intercourse with her. Her mother relayed this information to the officers handling the domestic disturbance, and B.O. repeated her allegations—this time to the police. The officers briefly detained A.L.-C. at the scene but then returned him to his mother and stepfather.

¶3 The following day, A.L.-C., his mother, and his stepfather traveled to the police station for questioning about the alleged sexual assaults. There, a detective and a Spanish interpreter advised the three of A.L.-C.'s rights under Miranda v. Arizona, 384 U.S. 436 (1966); see also In re Gault, 387 U.S. 1, 55 (1967) (extending to juveniles Miranda's safeguards against self-incrimination). The detective and interpreter then stepped out of the room to allow the family to discuss whether A.L.-C. would waive his rights. A videorecorder captured their exchange.

¶4 Initially, A.L.-C.'s stepfather explained that the detective wanted to know whether A.L.-C. understood his rights. His mother asked if he understood, and he nodded that he did. She also asked, "You know what you got yourself into, right?" Again, he nodded yes. His mother continued, "I don't know what they're going to do with you, son, but I have to protect [B.O.]. I tried, I tried many times to help you as much as possible, but, you didn't pay attention . . . . What do you have to say [for yourself]? Anything?" A.L.-C. replied that he was "always the liar, or the one lying" and told her he would rather keep quiet.

¶5 Whether he meant this as a refusal to speak with his mother or with the police is unclear. In any event, when the detective and interpreter re-entered the room a few minutes later, A.L.-C. and his mother both signed the Miranda waiver form. A.L.-C. also indicated that he understood his rights and agreed to discuss his sister's allegations. A.L.-C.'s stepfather left the room before the questioning began, but his mother remained for its entirety.

¶6    The detective questioned A.L.-C. for about an hour. At first, A.L.-C. denied B.O.'s allegations. After being confronted with details from an earlier forensic interview with B.O., however, he acknowledged B.O. was telling the truth about the sexual assaults.

¶7    Based on the interviews with A.L.-C. and B.O., the People charged A.L.-C. with sexual assault on a child. Before trial, A.L.-C. sought to suppress his incriminating statements, arguing that although his mother was present, she did not have his interests "uppermost in mind" when she co-signed the <u>Miranda</u> waiver and allowed him to speak with the detective. The trial court agreed with A.L.-C., concluded his <u>Miranda</u> waiver was ineffective, and ruled his statements inadmissible. The People now bring this interlocutory appeal pursuant to C.A.R. 4.1 challenging that ruling.

## II.  Preservation, Standard of Review, and Rules of Statutory Construction

¶8    After the People opposed A.L.-C.'s motion to suppress, the trial court addressed and ruled on the precise issue now before us. Thus, that issue is preserved for our review. C.R.E. 103(a)(2); <u>see also</u> <u>Camp Bird Colo., Inc. v. Bd. of Cty. Comm'rs</u>, 215 P.3d 1277, 1289–90 (Colo. App. 2009).

¶9    Whether we should affirm a trial court's suppression decision is a mixed question of law and fact. We defer to the trial court's findings of fact when sufficient record evidence supports them. <u>People v. Kutlak</u>, 2016 CO 1, ¶ 13, 364 P.3d 199, 203. Because the legal effect of those facts is a question of law, however, we review the trial court's ultimate conclusion de novo. <u>Id.</u>

4

¶10 When interpreting a statute, we endeavor to effectuate the General Assembly's intent. In re 2000–2001 Dist. Grand Jury, 97 P.3d 921, 924 (Colo. 2004). To discern legislative intent, we look first at "the plain and ordinary meaning of the statutory language." People v. Madden, 111 P.3d 452, 457 (Colo. 2005). When the language is clear, we must apply the statute as written, and only when that language is ambiguous or will lead to an absurd result will we resort to other modes of construction. In re 2000–2001 Dist. Grand Jury, 97 P.3d at 924.

### III. Analysis

¶11 In this case, we examine a statute protecting a juvenile's constitutional right against self-incrimination. Specifically, we consider whether section 19-2-511(1) of the Colorado Children's Code conditions the admissibility of a juvenile's statements to law enforcement on more than his parent's presence during his Miranda advisement and interrogation.[1] Because the statute merely requires that a parent be present, however, and the term "parent" is unambiguous, we conclude it was unnecessary for the trial court on these facts to examine the parent's motivation. Although we recognize some of our precedent suggests satisfying section 19-2-511(1) requires a two-pronged analysis—Was an eligible adult present for the advisement and interrogation? And did that adult sufficiently share the juvenile's interests?—we have never relied on such an analysis to declare a parent's presence inadequate. Because A.L.-C.'s mother accompanied him throughout the interview process, her presence satisfied section 19-2-511(1).

---

[1] The trial court determined the questioning constituted a custodial interrogation implicating Miranda, and the People do not contest that determination. We thus assume without deciding that the interview was a custodial interrogation.

5

¶12    In relevant part, section 19-2-511(1) states:

> No statements or admissions of a juvenile . . . shall be admissible in evidence against such juvenile unless a parent . . . of the juvenile was present at such interrogation and the juvenile and his or her parent . . . were advised of the juvenile's [constitutional rights].[2]

Interpreting this statute and its predecessor, section 19-2-102(3)(c)(I), 8B C.R.S. (1986) (repealed 1987),[3] we have identified two purposes. First, we have noted that the legislature sought to codify the holding of In re Gault, 387 U.S. at 55, which extended Miranda's protections to juveniles. See People v. Legler, 969 P.2d 691, 694 (Colo. 1998). Second, we have observed that the requirement that a parent, guardian, custodian, or attorney be present for the interrogation provides an "additional and necessary

---

[2] In full, section 19-2-511(1) states:

> No statements or admissions of a juvenile made as a result of the custodial interrogation of such juvenile by a law enforcement official concerning delinquent acts alleged to have been committed by the juvenile shall be admissible in evidence against such juvenile unless a parent, guardian, or legal or physical custodian of the juvenile was present at such interrogation and the juvenile and his or her parent, guardian, or legal or physical custodian were advised of the juvenile's right to remain silent and that any statements made may be used against him or her in a court of law, of his or her right to the presence of an attorney during such interrogation, and of his or her right to have counsel appointed if he or she so requests at the time of the interrogation; except that, if a public defender or counsel representing the juvenile is present at such interrogation, such statements or admissions may be admissible in evidence even though the juvenile's parent, guardian, or legal or physical custodian was not present.

The parties do not dispute that A.L.-C. is entitled to the protections of this section.

[3] Section 19-2-511(1) differs from the earlier statute only in that the former adds "physical custodian" to the list of eligible adults. That addition does not influence our analysis.

6

assurance that the juvenile's Fifth Amendment right against self-incrimination . . . will be fully afforded to him." People v. Saiz, 620 P.2d 15, 19–20 (Colo. 1980).

¶13 A.L.-C. contends that to effectuate these purposes we must consider not only whether a parent was present during the advisement and interrogation, but also whether she held the juvenile's interests "uppermost in mind." We disagree.

¶14 The statute's plain language compels our conclusion. It requires that a parent, guardian, custodian, or attorney be present during the advisement and interrogation. § 19-2-511(1). As we said in People v. Maes, 571 P.2d 305, 306 (Colo. 1977), parents, guardians, custodians, and representing attorneys would naturally stand "on the side" of the juvenile. Those with more attenuated relationships might not. Thus, the legislature has in essence already conducted the analysis A.L.-C. now asks us to perform. We decline to add a judicial gloss that would amount to an "effective-assistance-of-parent" standard on top of the plain language of the statute.

¶15 Nonetheless, A.L.-C. asserts that our precedent requires us to analyze whether the accompanying adult shared the juvenile's interests. The trial court adopted that position as well. Therefore, we turn to that precedent.

¶16 A.L.-C. largely relies on a quartet of cases involving adults who accompanied a juvenile during interrogation but who did not fit squarely into one of the statutory categories. None of them therefore prescribes the analysis required when the adult present does fit into one of those categories. In Maes, 571 P.2d at 306, we held a juvenile's Miranda waiver ineffective when his social services caseworker accompanied him during his interrogation. That caseworker, we observed, did not appear in any of

7

the statutorily defined categories, had not seen the defendant in eighteen months, and admitted to being "no more on the defendant's side than on the side of the public." Id. In sum, we determined (using the language A.L.-C. urges upon us today) that he did not have the juvenile's interests "uppermost in mind" and thus could not satisfy the statute. Id.

¶17 Two of our other opinions analyzed variations on that theme. In People v. Legler, 969 P.2d at 693, we again held a juvenile's Miranda waiver ineffective when her grandmother was the accompanying adult. There, we reasoned that "grandmother" was not part of a statutorily identified category and that the grandmother at issue held interests legally adverse to the juvenile defendant's because she wanted custody of the defendant's child. Id. at 696. Similarly, in People v. McAnally, 554 P.2d 1100, 1102–03 (Colo. 1976), we held two juveniles' Miranda waivers ineffective when the only accompanying adult was a school counselor. That counselor, we said, did not constitute a legal custodian and thus could not afford the juveniles the protection envisioned in the statute. Id.

¶18 Finally, in People v. S.M.D., 864 P.2d 1103, 1108 (Colo. 1994), we did find a juvenile's Miranda waiver effective when he was accompanied by his guardian ad litem ("GAL") who was representing his interests in a separate proceeding. Although we did not conclude the GAL was part of one of the statutory categories, we determined he had "act[ed] in the representative capacity contemplated by the statute." Id. at 1104. We considered three factors significant: (1) the GAL had previously "established a rapport" with the juvenile; (2) the GAL believed himself to be representing the juvenile's

8

interests before and during the interrogation; and (3) the juvenile's legal custodian, the Department of Social Services, had asked the GAL to accompany the juvenile for the interrogation. Id. at 1106–07. These factors indicated the GAL could fulfill the statutory purpose, even if he did not fit neatly into one of its categories. Id. at 1107.

¶19 While perhaps less than a model of clarity, these cases do not dictate that a "shared interest" analysis is necessary when the accompanying adult explicitly belongs to one of section 19-2-511(1)'s several categories. To the contrary, the four cases show how we have analyzed whether an adult outside one of those categories might still fulfill the statute's purpose. Thus, they simply do not speak to the issue here. When an adult plainly falls into one of the statutory categories, we defer to the legislature's judgment, at least in the absence of superseding constitutional considerations. Here, A.L.-C.'s mother falls within one such category, and no such superseding considerations are alleged.

¶20 While our reasoning today may appear to conflict with some of the language in People v. Hayhurst, 571 P.2d 721 (Colo. 1977), it supports the holding in that case. In Hayhurst, we considered nearly identical language under an earlier version of section 19-2-511(1). The juvenile's father was the accompanying adult. Id. at 723. Before holding the juvenile's statements admissible, we stated that a parent could not fulfill his statutory role if he held interests adverse to his child's. Id. at 725. We then went on to conclude that "the fact that the father was upset with his son's possible involvement in a crime does not mean that their interests were necessarily adverse." Id. at 726. Our holding, however, did not turn on that language. Instead, the narrowest grounds

supporting the outcome in <u>Hayhurst</u> are the ones required by the statute's plain language: the juvenile's parent was present for the advisement and interrogation. Thus, <u>Hayhurst</u> should not be read as suggesting an alternative to the approach we adopt today.

## IV. Conclusion

¶21 The plain language of section 19-2-511(1) requires only that a parent be present during a juvenile's advisement and interrogation. Here, A.L.-C.'s mother accompanied him during his advisement and interrogation. Her presence therefore satisfied section 19-2-511(1)'s requirements. The trial court's suppression order is therefore reversed and the case is remanded for further proceedings consistent with this opinion.