The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
December 24, 2025

**2025COA97**

**No. 24CA2155, *Sommers v. MarketPlace Realty, LLC* — Labor and Industry — Colorado Wage Claim Act — Wages — Severance Pay**

A division of the court of appeals interprets the statutory exclusion of severance pay from the definition of wages under the Colorado Wage Claim Act (CWCA), § 8-4-101(14)(b), C.R.S. 2025, and concludes that an employment agreement providing for severance compensation in the event of an employee's termination constituted severance pay under the CWCA.

Court of Appeals No. 24CA2155
Adams County District Court No. 22CV31422
Honorable Arturo G. Hernandez, Judge

Jonathan Sommers,

Plaintiff-Appellant,

v.

MarketPlace Realty, LLC, a Colorado limited liability company; and Matthew Sanchez,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE FOX
Brown and Meirink, JJ., concur

Announced December 24, 2025

Artemis Law, LLC, Leigh Horton, Denver, Colorado, for Plaintiff-Appellant

Murr Siler Eckels Delaney, PC, Joseph A. Murr, Daniel R. Delaney, Alyssa R. Frost, Denver, Colorado, for Defendants-Appellees

¶ 1     Plaintiff, Jonathan Sommers, appeals the district court's order granting partial summary judgment in favor of defendants, MarketPlace Realty, LLC (MPR) and Matthew Sanchez.[1]  We affirm.

## I.     Background

¶ 2     Sanchez owns MPR, a real estate business that buys and sells homes and manages rental properties.  In September 2019, MPR hired Sommers as an independent contractor.  One month later, Sommers became MPR's Chief Financial Officer (CFO), a change the parties memorialized in a signed compensation plan.  As relevant here, the plan included the following language: "Acknowledgement and Acceptance of Salary: . . . If terminated NOT for cause, [MPR] will provide [Sommers] [six] months salary as severance compensation" (the six-month provision).  In January 2022, MPR fired Sommers without paying him under the six-month provision.

¶ 3     Sommers later sued MPR and Sanchez, asserting claims for (1) a violation of the Colorado Wage Claim Act (CWCA), §§ 8-4-101 to -127, C.R.S. 2025; (2) promissory estoppel; (3) unjust enrichment;

---

[1] In the interest of brevity, we refer only to MPR when discussing MPR's and Sanchez's joint arguments on appeal and in the district court.

and (4) illegal deduction of wages for a period in which MPR reduced Sommers' salary as part of a corrective action plan. The district court dismissed the illegal deduction claim on statute of limitations grounds.

¶ 4     MPR then moved for summary judgment on the remaining claims. It argued that Sommers' CWCA claim failed because (1) the CWCA expressly excludes severance pay from the definition of wages; and (2) Sommers was terminated for cause, so he was not entitled to severance compensation under the parties' agreement.[2]

¶ 5     The district court agreed and granted summary judgment to MPR on the CWCA claim. It reasoned that the CWCA unambiguously excludes severance pay from the definition of wages, and there was no reasonable dispute that "severance compensation" in the six-month provision amounted to severance pay under the CWCA. The court denied summary judgment on the promissory estoppel and unjust enrichment claims, but both claims were later dismissed.

---

[2] Sommers' original CWCA claim alleged that MPR also violated the CWCA by failing to build him a residential home pursuant to the parties' agreement. But he dismissed this portion of the claim after MPR moved for summary judgment.

¶ 6    Sommers now appeals, challenging the district court's grant of summary judgment on his CWCA claim seeking recovery under the six-month provision.

## II.    Analysis

¶ 7    Sommers argues that the district court erroneously granted summary judgment in MPR's favor. Specifically, he contends that the court erred by (1) construing the CWCA's reference to severance pay as unambiguous; (2) failing to analyze his argument that the six-month provision meets the CWCA's definition of wages; (3) failing to consider the parties' intent with respect to the six-month provision; (4) holding that MPR met its burden to establish that the six-month provision meets the CWCA's definition of severance pay; and (5) granting summary judgment despite disputes of fact regarding whether Sommers was terminated for cause.

¶ 8    We reject MPR's argument that the first and fourth issues are unpreserved. Sommers may not have explicitly argued that the term "severance" is ambiguous, but the court interpreted the term and found it unambiguous. *See People in Interest of A.L.-C.*, 2016 CO 71, ¶ 8 (where "the [district] court addressed and ruled on the precise issue" raised on appeal, the issue was sufficiently

preserved). As to the fourth issue, Sommers argued that summary judgment was improper because "severance compensation" constitutes wages under the CWCA. The "sum and substance" of this argument is that MPR did not meet its burden to show a lack of disputed facts as to whether severance compensation meets the CWCA's definition of severance pay. *In re Estate of Ramstetter*, 2016 COA 81, ¶ 68 ("[R]aising the 'sum and substance' of an argument is sufficient to preserve it." (citation omitted)).

¶ 9 However, we agree with MPR that Sommers did not preserve the third issue — his argument that the court erred by not considering the parties' intent underlying the six-month provision. Sommers responds that there was evidence of such intent in the materials accompanying the summary judgment filings and that the court considered the parties' intent. But Sommers never raised an argument about the parties' intent. *See Wolven v. Velez*, 2024 COA 8, ¶ 8 (A party must raise an issue "in a manner specific enough that it 'draws the . . . court's attention to the asserted error." (citation omitted)). And the district court considered the parties' intent to create a contract, not their intent concerning the six-month provision. However, in considering the statutory definition

4

of severance pay, the parties' intent (at least in the context that Sommers argues) is irrelevant.

¶ 10    Finally, because we conclude that the district court properly found no dispute as to whether the severance compensation in the six-month provision constituted severance pay under the CWCA, *why* Sommers was terminated is immaterial. Thus, we need not consider his fifth argument that the court erred by failing to consider whether he was terminated for cause. *See Stor-N-Lock Partners #15, LLC v. City of Thornton*, 2018 COA 65, ¶ 38 (explaining that we avoid issuing advisory opinions that "would have no practical effect on an existing controversy").

### A.    Standard of Review and Applicable Law

#### 1.    Statutory and Contract Interpretation

¶ 11    We review questions of contract and statutory interpretation de novo. *Heights Healthcare Co. v. BCER Eng'g, Inc.*, 2023 COA 44, ¶ 15. When interpreting statutes, we seek to effectuate the legislature's intent and begin by "look[ing] to the statute's language, 'giving its words and phrases their plain and ordinary meanings.'" *By the Rockies, LLC v. Perez*, 2025 CO 56, ¶ 17 (citation omitted). If a statute is unambiguous, "we look no further." *Id.* at ¶ 18. "A

statute is ambiguous when it is reasonably susceptible of multiple interpretations." *Id.* (citation omitted).

### 2. Summary Judgment

¶ 12　We also review summary judgment orders de novo. *Preferred Pro. Ins. Co. v. The Drs. Co.*, 2018 COA 49, ¶ 11. "Summary judgment is a drastic remedy that should be granted only when the pleadings and the supporting documents demonstrate that no genuine issue of material fact exists and that the moving party is legally entitled to judgment." *Id.* It is the moving party's burden "to establish the lack of a genuine issue of fact," and doubts must be resolved in the nonmoving party's favor. *Id.*

### 3. The CWCA

¶ 13　Under the CWCA, an employee may sue an employer for unpaid wages. § 8-4-109(3)(a), C.R.S. 2025. The CWCA defines "wages" and "compensation" as "all amounts for labor or services performed by employees" and provides that "[n]o amount is considered to be wages or compensation until such amount is earned, vested, and determinable, at which time such amount shall be payable to the employee." § 8-4-101(14)(a)(I). But the CWCA

explicitly provides that "'[w]ages' or 'compensation' does not include severance pay." § 8-4-101(14)(b).

## B.    Application

¶ 14    Sommers argues that "severance compensation" as used in the six-month provision is distinguishable from "severance pay" under the CWCA. His rationale is unconvincing.

¶ 15    First, he argues that most severance payments are meant "to cushion the blow of unemployment," while the provision here was "intended . . . to act as essentially a delayed signing bonus" and to provide job security. But courts have recognized that severance pay can have purposes beyond serving as a form of unemployment compensation. *E.g.*, *Kotrosits v. GATX Corp. Non-Contributory Pension Plan for Salaried Emps.*, 970 F.2d 1165, 1171 (3d Cir. 1992) ("[S]everance pay benefits may be intended to compensate an employee for the possibility of lower salary and benefits . . . ."); *Loc. 879, Allied Indus. Workers of Am. v. Chrysler Marine Corp.*, 819 F.2d 786, 788 (7th Cir. 1987) ("[W]hile one purpose of severance pay is to provide income between jobs, it also compensates employees for their service and for termination for reasons unrelated to their conduct."); *Miller v. St. Joseph Recovery Ctr., LLC*, 874 S.E.2d 345,

355 (W. Va. 2022) ("The severance package was an inducement to procure an employee's services and represented a form of deferred compensation for work performed during the employment.").

¶ 16    Indeed, a division of this court concluded that, under a prior version of section 8-4-101, severance pay constituted wages for purposes of the CWCA.[3] *Fang v. Showa Entetsu Co.*, 91 P.3d 419, 421-22 (Colo. App. 2003).  The division did not view severance pay as a cushion for unemployment but as "consideration for past services." *Id.*  Therefore, we are not persuaded that the statutory definition of severance pay is limited to payments intended to serve as quasi-unemployment benefits.

¶ 17    Sommers next contends that his severance compensation was wages because it was "earned, vested, and determinable." § 8-4-101(14)(a)(I).  The problem with this argument is that the CWCA expressly excludes severance pay from the definition of wages.  § 8-4-101(14)(b).  So even if severance pay is "earned, vested, and determinable" or is intended to provide job security, induce an employee's services, or provide a cushion for unemployment, the

---

[3] The 2002 version of the statute did not expressly exclude severance pay from the definition of wages.  § 8-4-101, C.R.S. 2002.

8

statute makes clear that it does not qualify as wages under the CWCA. *See* § 18-4-101(14)(a)(I), (b); *see also Fang*, 91 P.3d at 422 (suggesting that, by amending the statute to exclude severance pay, the legislature implicitly "acknowledge[d] that a severance payment . . . could constitute wages or compensation under the previous version of the statute").

¶ 18    We next address the district court's conclusion that the term "severance pay" is unambiguous and consider what *does* distinguish severance pay from other forms of payment. We conclude that term is not ambiguous, and the primary distinction hinges on an employee's termination. The statute's failure to define severance pay does not automatically render the term ambiguous. *Stoesz v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 86, ¶ 13. But because the term is undefined, we look to its plain and ordinary meaning. *Perez*, ¶ 17.

¶ 19    Divisions of this court have used the following definition of severance: "payment by an employer to its employee beyond the employee's wages upon termination of the employment relationship." *Green v. Indus. Claim Appeals Off.*, 765 P.2d 1064, 1066 (Colo. App. 1988) (citation omitted). Other courts have used

similar definitions.  *E.g.*, *Kelly v. Workers' Comp. Appeal Bd. (U.S. Airways Grp., Inc.)*, 992 A.2d 845, 853 (Pa. 2010) (severance pay is contingent on an employee's dismissal); *Compton v. Shopko Stores, Inc.*, 287 N.W.2d 720, 724 (Wis. 1980) ("Severance pay, by definition, means compensation given to an employee upon the severance of his employment relationship with his employer.").  And Black's Law Dictionary defines severance pay as "[m]oney (apart from back wages or salary) that an employer pays to a dismissed employee."[4]  Black's Law Dictionary 1655 (12th ed. 2024).

¶ 20    Here, Sommers was entitled to "severance compensation" equal to six months of his salary if he was not terminated for cause.  Thus, the payment depended on the termination of his employment with MPR and was payable after such termination.  It does not matter that the six-month provision was in a section titled

---

[4] We disagree with Sommers that comparing the Black's Law and Merriam-Webster definitions renders the statutory term ambiguous. Merriam-Webster defines severance pay as "an allowance *usually* based on length of service that is payable to an employee on termination of employment."  Merriam-Webster Dictionary (emphasis added), https://perma.cc/MX4P-CLGG.  The word "usually" indicates that basing severance pay on length of service is not necessary; it merely provides an example of one method for calculating severance pay.

"Acknowledgement and Acceptance of Salary." The provision's location in the agreement does not automatically exempt it from the statutory definition of severance pay or transform the payment into wages under the CWCA. Accordingly, the district court did not err by interpreting the six-month provision as providing for severance pay under the CWCA.

¶ 21 For similar reasons, we reject Sommers' argument that MPR failed to meet its burden to establish that "the payout" was severance pay under the CWCA. MPR cited the six-month provision's reference to "severance compensation," cited the CWCA's exclusion of "severance pay" from the definition of wages, and argued that severance pay under the statute and severance compensation in the six-month provision were the same. There was nothing more it had to prove to prevail. *See Preferred Pro. Ins. Co.*, ¶ 11. That MPR's argument was short does not mean it failed to meet its burden; a simple argument is not necessarily a failing one. We therefore conclude that the district court did not err by granting summary judgment on Sommers' CWCA claim. *See id.*

### III. Sommers' Request for a Remand

¶ 22 If we affirm the district court's grant of summary judgment, which we do, Sommers asks us to remand the case so he may amend his complaint to bring a breach of contract claim. We decline this invitation. Sommers relies on cases concluding that district courts may allow amended pleadings after remand from an appellate court, but he overlooks a key distinction: "Except where interlocutory review is appropriate, finality of judgment is the general prerequisite for appeal." *Civ. Serv. Comm'n v. Carney*, 97 P.3d 961, 967 (Colo. 2004). In general, and absent a timely postjudgment motion, "motions to amend a complaint may no longer be entertained" after there is a final judgment. *Id.*; *see also Schaden v. DIA Brewing Co.*, 2021 CO 4M, ¶ 39 (explaining that plaintiffs cannot amend a complaint after a final judgment enters but may seek relief under C.R.C.P. 59 or C.R.C.P. 60). Therefore, cases allowing the type of remand Sommers requests often involve interlocutory appeals from a final decision on some, but not all, claims. *E.g.*, *Nelson v. Elway*, 971 P.2d 245, 248 (Colo. App. 1998).

¶ 23 Here, there was no interlocutory appeal or post-trial motion, and all of Sommers' original claims were resolved before he

appealed. *See L.H.M. Corp., TCD v. Martinez*, 2021 CO 78, ¶¶ 14, 23 (explaining that a final judgment "disposes of the entire litigation on its merits," and outstanding attorney fees issues do not affect finality (citation omitted)). Therefore, we will not remand the case to allow Sommers to amend his complaint.

## IV. Attorney Fees and Costs

¶ 24 Both parties request attorney fees, and we deny both requests. Sommers argues that he is entitled to attorney fees under section 8-4-110, C.R.S. 2025, and C.A.R. 39.1 "due to the greater ability of [MPR] to absorb the cost of litigation and ensure that [Sommers] does not suffer economic hardship by advocating for his rights." This is not a cognizable ground for recovery; the statute allows an employee to recover attorney fees if, through litigation, "the employee recovers a sum greater than the amount tendered by the employer." § 8-4-110(1)(b)(I). Sommers recovered nothing in the district court, and we affirm the court's judgment on appeal.

¶ 25 Nor is MPR entitled to its appellate attorney fees. Citing its pending motion in the district court for fees and costs, MPR "reiterates its request and the bases for that request here for attorney[] fees and costs relative to this appeal." But MPR does not

cite C.A.R. 39.1 or any other legal or factual bases for an award of appellate attorney fees. *See* C.A.R. 39.1 (requests for appellate attorney fees "must explain the legal and factual basis for [the] award"). We therefore deny both parties' requests for attorney fees.

## V.    Disposition

¶ 26    The district court's judgment is affirmed.

JUDGE BROWN and JUDGE MEIRINK concur.